1   SCHILLING LAW GROUP, PC
      Charity M. Gilbreth (Bar No. 223504)
2     *charity.gilbreth@schillinglawgroup.com*
      Matthew G. Ardoin (Bar No. 293350)
3     *matt.ardoin@schillinglawgroup.com*
      Tyler H. Hunt (Bar No. 313326)
4     *tyler.hunt@schillinglawgroup.com*
    1100 Newport Center Drive, Suite 250
5   Newport Beach, California 92660
    Telephone: (949) 760-6120
6   Facsimile:  (949) 760-6129

7   Attorneys for ACTIVISION BLIZZARD, INC.
    and BLIZZARD ENTERTAINMENT, INC.

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11                   **SAN JOSE DIVISION**

12

13  ERIK ESTAVILLO,                       CASE NO. 5:19-cv-05540-NC

14              Plaintiff,                 Assigned To:  Hon. Nathanael Cousins
                                           Courtroom:    5
15       v.
                                           **NOTICE OF MOTION AND MOTION**
16  ACTIVISION BLIZZARD, INC.,             **TO DISMISS COMPLAINT;**
                                           **MEMORANDUM OF POINTS AND**
17              Defendant.                 **AUTHORITIES IN SUPPORT**
                                           **THEREOF**
18
                                           [*Request for Judicial Notice; Declaration of*
19                                         *Matthew G. Ardoin; and Proposed Order*
                                           *filed concurrently herewith*]
20
                                           Date:          October 23, 2019
21                                         Time:          1:00 p.m.
                                           Courtroom:     5
22
                                           Action Filed:  August 2, 2019
23                                         Trial Date:    None Set

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 23, 2019, at 1:00 p.m. or on such other date as the Court may provide, at 280 South 1st St., San Jose, California 95113, Courtroom 5, the Honorable Nathanael Cousins presiding, Defendant Activision Blizzard, Inc., parent company to Blizzard Entertainment, Inc. ("Blizzard"), which is erroneously sued herein as Activision Blizzard, Inc.,[1] will and hereby does move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Erik Estavillo's ("Plaintiff") Complaint.

Plaintiff alleges that Blizzard violated the Americans with Disabilities Act ("ADA") and Section 1723 of the California Civil Code ("Section 1723") because Blizzard did not adequately notify Plaintiff of the company's video game refund policy. This motion is made on the ground that Plaintiff fails to state a claim under the ADA because that statute does not apply to Blizzard's digital video game store, which is not connected to any actual, physical place. Plaintiff's Section 1723 claim fails as a matter of law for the same reason. The plain language of Section 1723 does not apply to digital stores, and even if it did, Plaintiff failed to perform the conditions precedent to make a claim under the statute. Further, the intention of the underlying the statute – to give consumers notice of refund policies prior to sale – is satisfied because Plaintiff was provided notice of Blizzard's refund policy at multiple places during the checkout and account creation processes. Blizzard therefore respectfully requests that the Court dismiss the Complaint with prejudice and without leave to amend. Finally, Blizzard intends to seek attorneys' fees under Civil Code Sections 1723(b)(2) and 1780(e) because Plaintiff's Complaint is meritless and is not made in good faith.

This motion is based upon this Notice Of Motion And Motion To Dismiss, the accompanying Memorandum Of Points and Authorities, Request for Judicial Notice,

---

[1] Plaintiff erroneously named Activision Blizzard, Inc., Blizzard Entertainment, Inc.'s parent entity, as the defendant. The undersigned counsel hereby responds on behalf of Activision Blizzard, Inc. and Blizzard Entertainment, Inc.

SCHILLING LAW GROUP, PC

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

1  Declaration of Matthew G. Ardoin and accompanying exhibits filed herewith, the

2  pleadings and other documents on file in this action, and any other evidence or argument

3  that may be considered by the Court.  A Proposed Order is also filed herewith.

4

5  Dated:  September 10, 2019             SCHILLING LAW GROUP, PC
                                         Charity M. Gilbreth
6                                        Matthew G. Ardoin
                                         Tyler H. Hunt
7

8

9                                        By: */s/ Matthew G. Ardoin*
                                         Matthew G. Ardoin
10                                       Attorneys for ACTIVISION
                                         BLIZZARD, INC. and BLIZZARD
11                                       ENTERTAINMENT, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5:19-cv-05540-NC                         NOTICE OF MOTION AND
                                 2       MOTION TO DISMISS COMPLAINT

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    <u>INTRODUCTION</u>**

3            Plaintiff Erik Estavillo's ("Plaintiff") Complaint is a meritless and misguided ploy

4    for attention.  In his autobiography titled "The PSN Plaintiff," Plaintiff details his long-

5    running practice of suing video game companies on specious claims.  Plaintiff admits that

6    his lawsuits are a means for seeking attention, writing that "[e]verybody loves attention

7    no matter what kind it is."  Request for Judicial Notice ("RJN"), Ex. 1 at p. 22.  The

8    instant lawsuit is Plaintiff's eighth case against a video game company.  RJN, Exs. 2 - 16.

9    All of Plaintiff's cases have been dismissed (voluntarily or by the court) within months of

10   filing.  *See id.*

11          Here, shortly after Plaintiff was allegedly "banned"[2] from playing the video game

12   Overwatch for indefensibly abusive conduct towards other players specifically prohibited

13   by Blizzard Entertainment, Inc.'s End User License Agreement, he filed the instant

14   action.  The Complaint sets forth two causes of action – violation of the Americans with

15   Disabilities Act ("ADA") and Section 1723 of the California Civil Code ("Section 1723")

16   – premised on Blizzard's alleged failure to "post" the company's refund policy on "the

17   front of their digital store for video gamers."[3]  Neither of these statutes, however, apply to

18   Blizzard's online digital store.  As a matter of law, Plaintiff's claims are fatally flawed

19   and the Complaint should be dismissed with prejudice and without leave to amend.

20

21

22

23

---

24   [2]    Contrary to his allegations, Plaintiff was not "banned" from playing Overwatch.  He was

25   suspended for ten days for insulting other players and making racist and homophobic
     comments.

26   [3]    Blizzard Entertainment, Inc. ("Blizzard") is the developer and publisher of the video

27   game Overwatch that is at issue in the Complaint.  Plaintiff erroneously named Activision
     Blizzard, Inc., Blizzard Entertainment, Inc.'s parent entity, as the defendant in this

28   matter.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Contends The Placement Of Blizzard's Refund Policy In Its Digital Store Is Insufficient

On August 2, 2019, Plaintiff filed his Complaint *pro se* asserting two causes of action.  First, Plaintiff alleges that Blizzard violated Section 1723 of the California Civil Code by "not explicitly stating that no returns or refunds are available ***on the front of their digital store for video gamers***."  (Compl. at 4:19-22) (emphasis added).  Second, Plaintiff alleges that Blizzard violated the ADA by not updating its digital store and End User License Agreement ("EULA") to meet the "needs of Americans with Mental Disabilities" who need "important facts about refunds, returns, and other important information … explicitly explained to them."  (Compl. at 4:27-5:6).  Plaintiff contends that Blizzard's refund policy should be "explained to [people with mental hardships] right away, and not to be hidden at the bottom of an EULA they may have trouble deciphering in the first place."  (Compl. at 6:1-5).  Accordingly, Plaintiff asks the Court to instruct Blizzard to revise the EULA so that "information regarding refunds, returns, and which legal rights they may be giving up" is "stated at the top of the EULA instead of at the bottom of the EULA where they are harder to find and read for such people."  (Compl. at 6:17-22).  In sum, Plaintiff takes issue with the placement of Blizzard's refund policy in its digital store.

### B.   Plaintiff's Identical Claims Against Another Video Game Company Failed As A Matter of Law

Earlier this year, Plaintiff's identical lawsuit against another digital video game store was dismissed at the pleading stage.  *See* RJN, Exs. 14 – 16.  In *Estavillo v. Behaviour Interactive*, 2019 U.S. Dist. LEXIS 108146 (N.D. Cal. May 30, 2019), Plaintiff sued two other video game companies for the exact claims at issue here. *Estavillo,* 2019 U.S. Dist. LEXIS 108146, at *3-4; RJN, Ex. 15 at p. 80.  In that case he alleged a Section 1723 violation for failing to "state on the front page of the website for their digital-video-gaming store, Steam, that no returns or refunds are available for

1   banned video gamers," and that defendants violated the ADA by "not updating their

2   websites and [EULA] 'to meet the needs of Americans with Mental Disabilities,' who

3   need to have 'important facts about refunds … explicitly explained to them.'" *Id.*  The

4   court dismissed the ADA claim because that statute does not apply to "***digital*** stores"

5   where the services are not "connected to any actual, physical place." *Estavillo*, 2019 U.S.

6   Dist. LEXIS 108146, at *6-8; RJN, Ex. 15 at p. 81.  The Court also dismissed the Section

7   1723 claim because the amount in controversy was less than $75,000, divesting the court

8   of diversity jurisdiction.  *Estavillo*, 2019 U.S. Dist. LEXIS 108146, at *10-11; RJN, Ex.

9   15 at p. 82.

10          **C.      Plaintiff Alleges That He Purchased "Overwatch" Through Blizzard's**

11                  **Digital Store**

12          Blizzard is the developer and publisher of the video game Overwatch, an

13  interactive game played over the Internet.  RJN, Ex. 17 at pp. 88-89.  Players can buy

14  Overwatch through Blizzard's online digital store, which sells digital copies of its games

15  at https://us.shop.battle.net/en-us ("Digital Store").  *Id.* at p. 88.  The Complaint alleges

16  that Plaintiff purchased Overwatch from the "Blizzard/Overwatch digital storefront."

17  (Comp. at 4:3-7; 4:20-22) (explaining Blizzard operates a "digital store for video

18  gamers").  Players access Overwatch through Blizzard's Battle.net Application

19  ("Battle.net"), which is Blizzard's gaming service that enables players to compete against

20  one another online and to communicate with one another using in-game text and voice

21  chat features.  RJN, Ex. 17 at p. 89; (Compl. at 2:20-23 (alleging that Plaintiff relies on

22  chat functions to communicate with other players)).

23          **D.      Blizzard's Refund Policy Is Clearly Set Forth In Its Terms Of Sale And**

24                  **End User License Agreement**

25          Plaintiff was presented with Blizzard's refund policy on a least two occasions

26  before he was able to first play Overwatch.  First, when players purchase Overwatch

27  through the digital store a prompt reads "By clicking 'Pay Now,' you agree to the Terms

28  of Sale and Privacy Policy," which are accessed by clicking the words "Terms of Sale."

1   RJN, Ex. 21.  The Terms of Sale expressly state that all sales of digital content are final

2   and "[n]o refunds are permitted except with respect to any statutory warranties or

3   guaranties that cannot be excluded or limited by law."  RJN, Ex. 22 at p. 105.

4          Second, before playing Overwatch on PC, a player must create a Blizzard account.

5   In order to do so, the player must click through a prompt stating that by creating an

6   account, the player is agreeing to Blizzard's EULA.  RJN, Ex. 18.  The Complaint

7   acknowledges that the EULA is the agreement governing the parties' relationship.  (*See,*

8   *e.g.,* Compl. at 4:27-5:7; 6:17-22).  The EULA includes Blizzard's refund policy:

9              YOU ACKNOWLEDGE THAT BLIZZARD IS NOT REQUIRED
               TO REFUND AMOUNTS YOU PAY TO BLIZZARD FOR USE
10             OF THE PLATFORM, OR FOR DIGITAL PURCHASES MADE
               THROUGH THE PLATFORM, FOR ANY REASON.
11

12  RJN, Ex. 20 at p. 98. *See also* RJN, Ex. 19 at pp. 94-95 (prior EULA setting forth similar

13  refund policy).  The Complaint does not dispute that the refund policy is included in the

14  EULA.  (Compl. at 6:17-22 (alleging that the refund policy should not be "at the bottom"

15  of the EULA)).

16         The EULA grants players a revocable license to install and access Overwatch and

17  Battle.net in accordance with the terms of the EULA.  RJN, Ex. 20 at pp. 97-99.  If a

18  player violates the EULA, Blizzard has the right to suspend or revoke the player's license

19  to use Battle.net.  *Id.* at p. 99.  The EULA expressly states that Blizzard may suspend or

20  revoke the license if the player "engage[s] in any conduct intended to disrupt or diminish

21  the game experience for other players," including "harassment" and "abusive behavior or

22  chat."  *Id.* at pp. 99-100.  The Complaint alleges that Blizzard "bann[ed] [Plaintiff] from

23  their video game, Overwatch … because of 'abusive chat.'" (Compl. at 2:24-27).

24  **III.    ARGUMENT**

25      **A.    Standard For 12(b)(6) Motion To Dismiss**

26         Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a

27  claim at the pleading stage if it does not state a claim upon which relief may be granted.

28  Fed. R. Civ. P. 12(b)(6).  "Dismissal can be based on the lack of a cognizable legal theory

1  or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*
2  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff must allege
3  sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*
4  *Twombly*, 550 U.S. 544, 570 (2007).  When considering whether a complaint states a
5  claim on which relief may be granted, the court accepts allegations in the complaint as
6  true and construes the allegations in the light most favorable to the plaintiff.  *Hishon v.*
7  *King & Spaulding*, 467 U.S. 69, 73 (1984).
8      In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a court is
9  permitted to consider material which is properly submitted as part of the complaint,
10  documents that are not physically attached to the complaint if their authenticity is not
11  contested and the plaintiff's complaint necessarily relies on them, and matters of public
12  record.  *Lee v. City of Los Angeles*, 250 F.3d 668, 668-89 (9th Cir. 2001).

13      **B.**      **Plaintiff's ADA Claim Fails Because Blizzard's Digital Store Has No**
14                   **Connection To A Physical Place**

15      Plaintiff fails to state a cause of action under the ADA because the Ninth Circuit
16  has held that the ADA does not apply to websites "not connected to any actual physical
17  place." *Earll v. eBay, Inc.*, 599 F. App'x 695, 696 (9th Cir. 2015) (holding that eBay is
18  not subject to the ADA).  Title III of the ADA provides that "[n]o individual shall be
19  discriminated against on the basis of disability in the full and equal enjoyment of the
20  goods, services, facilities, privileges, advantages, or accommodations *of any place of*
21  *public accommodation*." 42 U.S.C. §12182(a) (emphasis added).  The Ninth Circuit has
22  interpreted the term "place of public accommodation" to require "some connection
23  between the good or service complained of and an actual physical place." *Weyer v.*
24  *Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000); *Earll,* 599 F.
25  App'x at 696.  The Complaint does not allege that Blizzard operates a physical store, nor
26  can it.  Instead, the Complaint takes issue with Blizzard's "digital store for video
27  gamers." (Compl. at 4:19-22).  Plaintiff's ADA claim fails as a matter of law because
28  Blizzard's Digital Store has no connection to an actual, physical place.

1  Earlier this year this District Court dismissed Plaintiff's ADA claim against

2  another video game company with similar allegations because the digital video game

3  store lacked a connection to a physical place.  *Estavillo*, 2019 U.S. Dist. LEXIS 108146,

4  at *7-8; *Estavillo v. Behaviour Interactive*, 2019 U.S. Dist. LEXIS 108144, at *2-3 (June

5  27, 2019) (adopting report and recommendation for dismissal as the court's order); RJN

6  Exs. 15 and 16.  The Court explained:

7  
> According to Plaintiff's allegations, Steam is a 'digital store.'
> As a result, the Amended Complaint lacks allegations that

8  
> show Steam has a connection to an actual, physical place.
> Without that connection, Plaintiff's 'ADA claim fails as a

9  
> matter of law.'

10  *Estavillo*, 2019 U.S. Dist. LEXIS 108146, at *7-8;  RJN, Ex. 15 at p. 80.  Similarly,

11  Plaintiff's ADA claim should be dismissed.

12  ### C.     Plaintiff's Section 1723 Claim Fails As A Matter Of Law

13  The crux of the issue in dispute for Plaintiff's Section 1723 claim is the placement

14  of Blizzard's refund policy in the Digital Store.  (Compl. at 4:19-22; 4:27-5:6; 6:1-5;

15  6:17-22).  Yet Plaintiff cannot set forth a cognizable claim under Section 1723 because

16  the plain language of the statute simply does not apply to digital stores.  Even assuming

17  *arguendo* that the statute applies to digital stores, Plaintiff did not perform the conditions

18  precedent to make a claim under Section 1723.  And even if he had, Blizzard provides its

19  refund policy at multiple locations in the Digital Store.[4]

20  1.     The Plain Language Of Section 1723 Does Not Apply To Digital

21  Stores

22  Plaintiff alleges that Blizzard violated Section 1723 "by not explicitly stating that

23  no returns or refunds are available on the ***front of their digital store*** for video gamers."

24  

25  [4]     Plaintiff not only fails to state a claim against Blizzard, his entire lawsuit is brought in
bad faith.  Plaintiff claims without any statutory basis that Blizzard violated Section 1723

26  for failing to put the refund policy "on the front of their digital store" – the statute has no
such requirement.  Plaintiff also admits that he had notice of the refund policy in

27  Blizzard's EULA.  Finally, Plaintiff's allegation that he was "banned" is false – he was
suspended and may play Overwatch at this very moment if he wished.

28  

5:19-cv-05540-NC

NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT

(Compl. at 4:19-22) (emphasis added).  The statute, however, has no such requirement.  The plain language of Section 1723 does not apply to digital stores:

> Every retail seller which sells goods to the public in this state that has a policy as to any of those goods of not giving full cash or credit refunds, or of not allowing equal exchanges…, for at least seven days following purchase of the goods if they are returned and proof of their purchase is presented, shall conspicuously display that policy either on signs posted *at each cash register and sales counter, at each public entrance, on tags attached to each item sold under that policy, or on the retail seller's order forms*, if any."

Cal. Civ. Code §1723(a) (emphasis added).  Digital stores are not mentioned in the statute.  Nothing in Section 1723 requires that a refund policy be placed on the "front of [a] digital store" – as demanded by Plaintiff – nor anywhere else on a website.  Instead, Section 1723 contemplates a physical location with a cash register, sales counter, and public entrance.  The obligations imposed by Section 1723 are inapplicable in a digital store environment where there is no cash register, no sales counter, no public entrance, no tags attached to items, and no order forms.  Further, no California court has expanded Section 1723 to apply to digital stores or websites.  Since the statutory language is clear, the Court must follow the plain meaning of the statute and cannot rewrite the statute beyond its express terms.[5]  *See Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224, 232-33 ("Although the CLRA has been interpreted broadly, courts have not expanded it beyond its express terms.");  *See Prof'l Eng'rs in Cal. Gov. v. Brown*, 229 Cal. App. 4th 861, 873 (2014) (if statutory language is clear, the court must follow its plain meaning).  Since nothing in Section 1723 indicates where refund policies must be placed in digital stores, Plaintiff's Section 1723 claim fails as a matter of law.

---

[5]     Further, the legislature could not have intended Section 1723 to apply to digital stores because such stores did not even exist when the statute was enacted in 1990.  *Burden v. Snowden*, 2 Cal. 4th 556, 562 (1992) (objective of statutory interpretation is to ascertain and effectuate legislative intent); Cal. Civ. Code §1723, added by Stats. 1990, ch. 422 (A.B.3047), §2.

2.   <u>Plaintiff Did Not Perform The Conditions Precedent To Make A Section 1723 Claim</u>

Assuming *arguendo* that Section 1723 applies to digital stores, Plaintiff's Complaint does not allege that he performed the conditions precedent to make a claim under the statute (nor could he).  Section 1723 requires that a buyer "returns, or attempts to return, the purchased goods on or before the 30th day after their purchase."  Cal. Civ. Code §1723(c)(1).  Here, Plaintiff did not attempt to "return" goods.[6]  Rather, Plaintiff alleges he was "banned" from playing Overwatch for his conduct (as noted above, in fact he only received a temporary suspension, which has since expired).  (Compl. at 2:24-27).  Further, this did not occur within thirty days of purchase.  The Complaint admits Plaintiff purchased Overwatch years ago. (Compl. at 3:7-10).  Since Plaintiff failed to perform the conditions precedent required by Section 1723, his claim must be dismissed.

3.   <u>Blizzard's Refund Policy Was Provided At Multiple Locations During The Checkout And Account Creation Processes</u>

Finally, even if Section 1723 applies to Plaintiff's situation, the intention of the underlying the statute – to give consumers notice of refund policies prior to sale – is satisfied because Blizzard provides its refund policy at multiple places in the Digital Store.  Specifically, the EULA states in all capitalized letters that Blizzard "IS NOT REQUIRED TO REFUND AMOUNTS YOU PAY … FOR ANY REASON."  RJN, Ex. 20 at p. 98.  *See also* RJN, Ex. 19.  The Complaint concedes that the EULA includes the refund policy.  (Compl. at 6:17-22).  In addition, the Terms of Sale expressly state that Plaintiff is not entitled to a refund for the purchase of digital content such as

---

[6] Moreover, Plaintiff did not purchase a "good."  California law defines "goods" as "tangible" and "movable" personal property.  *See, e.g., Gonzalez & Co. v. Department of Alcoholic Bev. Control*, 151 Cal. App. 3d 172, 175-76 (1984); *Italiani v. MGM Corp.*, 45 Cal. App. 2d 464, 467 (1941); Cal. Civ. Code §1761.  Plaintiff purchased a license to use Blizzard's video game and Battle.net.  *See* RJN, Ex. 20 at pp. 97-98.  Because a "good" must be a tangible item, courts have held that licenses to use intellectual property do not constitute "goods."  *See, e.g., Tele Atlas N.V. v. NAVTEQ Corp.*, 397 F. Supp. 2d 1184, 1192-93 (N.D. Cal. 2005) (holding that a patent license is not a tangible good).

1   Overwatch.  RJN, Ex. 22 at p. 105.  Overwatch players are provided the Terms of Sale

2   and the EULA prior to completing their purchases and when creating an account to play

3   the game on PCs.  RJN, Exs. 18, 21.  Plaintiff's Section 1723 claim is therefore meritless

4   and should be dismissed.

5   **IV.   <u>CONCLUSION</u>**

6          For the reasons set forth above, Blizzard respectfully requests that the Court

7   dismiss Plaintiff's Complaint with prejudice and without leave to amend.  Plaintiff's

8   lawsuit lacks merit and was filed to re-gain attention.  As Plaintiff writes, whenever he

9   "need[s] to feel a smile on my face, I have just learned to go back and read some of the

10  articles and what people have to say about me" in connection with his prior lawsuits.

11  RJN, Ex. 1 at p. 22.  Plaintiff laments that "[t]hese days, no one ever calls me or comes

12  knocking at my door, although I sometimes wish they would." *Id.* at p. 23.  Plaintiff's

13  desire for attention is a wholly inappropriate reason to file a lawsuit.  This case should be

14  dismissed before the Court or Blizzard are required to waste any further time or

15  resources.  Further, the Court should award Blizzard the attorneys' fees and costs

16  incurred to respond to Plaintiff's baseless Complaint.  The Section 1723 violation that

17  Plaintiff alleges is subject to the Consumers Legal Remedies Act, which allows a

18  prevailing defendant to recover attorneys' fees where plaintiff acts in bad faith, as

19  Plaintiff has here.  *See* Cal. Civil Code §§1723(b)(2); 1780(e).

20  Dated:  September 10, 2019                    SCHILLING LAW GROUP, PC

21                                               Charity M. Gilbreth
22                                               Matthew G. Ardoin
23                                               Tyler H. Hunt
24

25                                       By: */s/ Matthew G. Ardoin*
26                                               Matthew G. Ardoin
                                                 Attorneys for ACTIVISION
27                                               BLIZZARD, INC. and BLIZZARD
                                                 ENTERTAINMENT, INC.
28

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California.  I am over the age of 18 years and not a party to this action.  My business address is SCHILLING LAW GROUP, PC 1100 Newport Center Drive, Suite 250, Newport Beach, CA 92660.  My email address is *shamika.polin@schillinglawgroup.com*.

On **September 10, 2019**, I served the following document(s) described as:

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** by serving a true copy of the above-described document in the following manner:

**BY OVERNIGHT MAIL DELIVERY**

I am familiar with the office practice of Schilling Law Group, PC for collecting and processing documents for overnight mail delivery by Express Mail or other express service carrier.  Under that practice, such documents are delivered for overnight mail delivery by Express Mail or other express service carrier on that same day in the ordinary course of business, with delivery fees thereon fully prepaid and/or provided for.  I mailed a sealed envelope or package containing the above-described document(s) and addressed as set forth below in accordance with the office practice of Schilling Law Group, PC for collecting and processing documents for overnight mail delivery by Express Mail or other express service carrier:

| | |
|---|---|
| Erik Estavillo<br>3284 Cortese Circle<br>San Jose, CA 95127<br>Tel: (408) 593-1226 | |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 10, 2019

Shamika L. Polin

4822-4144-5792, v. 10

5:19-cv-05540-NC

NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT

SCHILLING LAW
GROUP, PC