1  SCHILLING LAW GROUP, PC
      Charity M. Gilbreth (Bar No. 223504)
2    *charity.gilbreth@schillinglawgroup.com*
      Matthew G. Ardoin (Bar No. 293350)
3    *matt.ardoin@schillinglawgroup.com*
      Tyler H. Hunt (Bar No. 313326)
4    *tyler.hunt@schillinglawgroup.com*
    1100 Newport Center Drive, Suite 250
5  Newport Beach, California 92660
    Telephone: (949) 760-6120
6  Facsimile:  (949) 760-6129

7  Attorneys for ACTIVISION BLIZZARD, INC.
    and BLIZZARD ENTERTAINMENT, INC.

8

9                **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11                      **SAN JOSE DIVISION**

12

13  ERIK ESTAVILLO,                           CASE NO. 5:19-cv-05540-NC

14              Plaintiff,                     Assigned To:  Hon. Nathanael Cousins
                                              Department:   5
15        v.
                                              **REQUEST FOR JUDICIAL NOTICE IN**
16  ACTIVISION BLIZZARD, INC.,                **SUPPORT OF MOTION TO DISMISS**
                                              **COMPLAINT; DECLARATION OF**
17              Defendant.                    **MATTHEW G. ARDOIN**

18                                            [*Notice of Motion and Motion to Dismiss
                                              Complaint and Proposed Order filed*
19                                            *concurrently herewith*]

20                                            Date:          October 23, 2019
                                              Time:          1:00 p.m.
21                                            Courtroom:     5

22                                            Action Filed:  August 2, 2019
                                              Trial Date:    None Set
23

24

25

26

27

28

5:19-cv-05540-NC                              REQUEST FOR JUDICIAL NOTICE;
                                             DECLARATION OF MATTHEW G.
                                             ARDOIN

## REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, Defendant Activision Blizzard, Inc., parent company to Blizzard Entertainment, Inc. ("Blizzard"), which is erroneously sued herein as Activision Blizzard, Inc., requests that the Court take judicial notice of the following facts from Blizzard's website and Exhibits attached to the Declaration of Matthew G. Ardoin:

## EXHIBITS

**Exhibit 1**    Excerpt from Plaintiff Erik Estavillo's ("Plaintiff") 2018 autobiography titled "The PSN Plaintiff."

**Exhibit 2**    Plaintiff's Complaint entitled *Erik Estavillo v. Sony Computer Ent. America*, Case No. C09-03007 RMW, filed on July 6, 2009, in the Northern District of California, San Jose Division ("Case 1").

**Exhibit 3**    Order Granting Defendant's Motion to Dismiss in Case 1 filed on September 22, 2009.

**Exhibit 4**    Plaintiff's Complaint entitled *Erik Estavillo v. Sony Computer Entertainment America*, Case No. 2009-1-CV-154691, filed on October 14, 2009, in Santa Clara Superior Court ("Case 2").

**Exhibit 5**    Plaintiff's January 29, 2010 Voluntary Request for Dismissal of Case 2.

**Exhibit 6**    Plaintiff's Complaint entitled *Erik Estavillo v. Activision Blizzard, Inc.*, Case No. 2009-1-CV-158058, filed on November 24, 2009, in Santa Clara County Superior Court ("Case 3").

**Exhibit 7**    Plaintiff's Voluntary Request for Dismissal filed in Case 3.

**Exhibit 8**    Plaintiff's Complaint entitled *Erik Estavillo v. Apple, Inc.*, Case No. 2010-1-CV-173701, filed on June 4, 2010, in Santa Clara County Superior Court ("Case 4").

**Exhibit 9**    Plaintiff's June 23, 2010 Voluntary Request for Dismissal of Case 4.

| | | |
|---|---|---|
| 1 | **Exhibit 10** | Plaintiff's Complaint entitled *Erik Estavillo v. Insomniac Games,* |
| 2 | | *Inc.*, Case No. 14-cv-00839, filed on February 25, 2014 in Northern |
| 3 | | District of California ("Case 5"). |
| 4 | **Exhibit 11** | Plaintiff's April 10, 2014 Voluntary Request for Dismissal of |
| 5 | | Case 5. |
| 6 | **Exhibit 12** | Plaintiff's Complaint entitled *Erik Estavillo v. Insomniac Games,* |
| 7 | | *Inc.*, Case No. 2014-CV-261274, filed on February 25, 2014, in |
| 8 | | Santa Clara Superior Court ("Case 6"). |
| 9 | **Exhibit 13** | Plaintiff's April 10, 2014 Voluntary Request for Dismissal of |
| 10 | | Case 6. |
| 11 | **Exhibit 14** | Plaintiff's Amended Complaint in the matter of *Erik Estavillo v.* |
| 12 | | *Behavior Interactive/Starbreeze Studios*, Case No. 19-cv-01025, |
| 13 | | filed on March 26, 2019, in Northern District of California |
| 14 | | ("Case 7"). |
| 15 | **Exhibit 15** | Report and Recommendation to Dismiss Plaintiff's Complaint in |
| 16 | | Case 7. |
| 17 | **Exhibit 16** | Order Adopting Report and Recommendation And Dismissing the |
| 18 | | Case in Case 7. |
| 19 | **Exhibit 17** | Blizzard's webpage providing information about Overwatch from |
| 20 | | Blizzard's digital store. |
| 21 | **Exhibit 18** | Blizzard's webpage where players agree to Blizzard's End User |
| 22 | | License Agreement ("EULA") before creating an account to use |
| 23 | | Blizzard's Battle.net application and play video games. |
| 24 | **Exhibit 19** | Excerpt of Blizzard's EULA (dated February 28, 2015) effective at |
| 25 | | the time Plaintiff purchased Overwatch. |
| 26 | **Exhibit 20:** | Excerpt of Blizzard's current EULA (dated January 1, 2018) |
| 27 | | available at https://www.blizzard.com/en-us/legal/fba4d00f-c7e4- |
| 28 | | 4883-b8b9-1b4500a402ea/blizzard-end-user-license-agreement. |

1    **Exhibit 21**: Blizzard's webpage where players agree to the Terms of Sale before

2        purchasing Overwatch from Blizzard's digital store.

3    **Exhibit 22**    Excerpt of Blizzard's Terms of Sale, last revised January 12, 2015,

4        available at https://www.blizzard.com/en-us/legal/2173e4b7-3d3c-

5        4c92-96e0-96b332d36eff/terms-of-sale.

## I. THE COURT MAY TAKE JUDICIAL NOTICE OF EXHIBITS 1 THROUGH 22

### A. Plaintiff's Autobiography Is Judicially Noticeable Because Plaintiff Cannot Dispute Its Existence And It Is Readily Determinable On The Internet (Exhibit 1)

A court may take judicial notice of the fact that a book was published by a litigant. *See Flynn v. Hubbard*, 782 F.2d 1084, 1087 n.1 (1st Cir. 1986). Plaintiff's self-published autobiography about his exploits suing video game companies, "The PSN Plaintiff," dated 9/27/2018 (Exhibit 1), is therefore judicially noticeable. Plaintiff cannot dispute the existence of his book, which is readily determinable on the Internet. *See* Fed. R. Civ. P. 201(b).[1] It is "not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224-25 (10th Cir. 2007). For example, courts have taken judicial notice of the President's tweets, an NFL player's statistics, and a company's earnings. *See Regents of the Univ. of Cal. v. U.S. Dept. of Homeland Security*, 908 F.3d 476, 519 n.30 (9th Cir. 2018); *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 & fn. 5 (9th Cir. 2012); *O'Toole*, 499 F.3d at 1224-25.

---

[1] Plaintiff's book is available for purchase on various websites, including on Amazon at the following link: https://www.amazon.com/PSN-Plaintiff-Erik-C-Estavillo/dp/1984556185/ref=olp_product_details?_encoding=UTF8&me=

**B.**   **Complaints, Dismissals, And Court Orders From Plaintiff's Lawsuits Against Other Video Game Companies Are Judicially Noticeable Documents From Other Legal Proceedings (Exhibits 2 – 16)**

Plaintiff's complaints, his dismissals, and pleadings from his other lawsuits (Exhibits 2 through 16) are judicially noticeable.  *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 894-95 (9th Cir. 2014) (taking judicial notice of documents from another court because it "is well established that we may take judicial notice of judicial proceedings in other courts"); *Headwaters, Inc. v. United States Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (taking judicial notice of the "docket" of a separate legal proceeding).

**C.**   **Blizzard's Webpages Are Judicially Noticeable As They Are Not Subject To Dispute And Are Readily Ascertainable By The Court On The Internet (Exhibits 17, 18, and 21)**

The Court should take judicial notice of webpages from Blizzard's digital store that provide general information about Overwatch.  (Exhibit 17).[2]  The Court should also take judicial notice of the webpages showing that players must agree to Blizzard's EULA before downloading the Battle.net application[3] and agree to Blizzard's Terms of Sale before buying Overwatch.[4]  (Exhibits 18 and 21).  These facts are not subject to dispute and are readily ascertainable by the Court on the Internet.  *See O'Toole*, 499 F.3d at 1224-25 (finding that a court may "take judicial notice of factual information found on the world wide web.").  Moreover, courts have taken judicial notice of documents establishing that customers of a website agree to a defendant's Terms of Service before accessing the website's service or product.  *See, e.g., Garcia v. Enter. Holdings, Inc.*, 78

---

[2]   The Court may access the webpage in Exhibit 17 at https://us.shop.battle.net/en-us/product/overwatch?blzcmp=ow_buy_header#techspecs

[3]   The Court may access the webpage depicted in Exhibit 18 at https://us.battle.net/account/creation/en/.

[4]   The Court may access the webpage depicted in Exhibit 21 by (1) creating a Blizzard account and (2) initiating the steps to purchase Overwatch on Blizzard's digital store at https://us.shop.battle.net/en-us/product/overwatch?blzcmp=ow_buy_nav.

1  F. Supp. 3d 1125, 1130, 1136 (N.D. Cal. 2015) (considering screenshot of a webpage

2  showing that plaintiff agreed to Terms of Service and Privacy Policy before signing up

3  for defendant's service).

### D.   The EULA Is Judicially Noticeable Because Plaintiff Alleges Its Contents In His Complaint (Exhibits 19 - 20)

6       "[D]ocuments whose contents are alleged in a complaint and whose authenticity

7  no party questions, but which are not physically attached to the pleading, may be

8  considered in ruling on a Rule 12(b)(6) motion to dismiss." *See Branch v. Tunnell*,

9  14 F.3d 449, 454 (9th Cir. 1994).[5]  Plaintiff's allegations refer to the contents of

10 Blizzard's EULA and Plaintiff complains about the location of the refund policy in the

11 EULA.  *See* Compl. at 4:27-5:7; 6:17-22.  Accordingly, the EULA that Plaintiff agreed to

12 when he initially purchased Overwatch (Exhibit 19), and the current EULA (Exhibit 20)

13 located at https://www.blizzard.com/en-us/legal/fba4d00f-c7e4-4883-b8b9-

14 1b4500a402ea/blizzard-end-user-license-agreement, are subject to judicial notice.

### E.   Blizzard's EULA And Terms Of Sale Are Judicially Noticeable Since They Are  Essential To Plaintiff's Claims (Exhibits 19, 20, and 22)

17      Further, the EULA (Exhibits 19 and 20) and Terms of Sale (Exhibit 22) are

18 judicially noticeable because they constitute an agreement that is integral to Plaintiff's

19 claims.  A Court may consider a document not attached to the pleadings, and not alleged

20 in the complaint, where the document is crucial to plaintiff's claims.  *Garcia*, 78 F. Supp.

21 3d at 1136-37; *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (explaining that a

22 court should take judicial notice of documents "crucial to the plaintiff's claims, but not

23 explicitly incorporated into the complaint" to avoid gamesmanship where a plaintiff

24 deliberately omits references to relevant documents to succeed on a motion to dismiss).[6]

25 _____

26 [5]     Overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)

27 [6]     Superseded by statute on other grounds recognized in *Steinle v. City & Cty San

28 Francisco*, 919 F.2d 1154, 1167 n.17 (9th Cir. 2019).

1   In *Garcia v. Enter. Holdings, Inc.*, a court took judicial notice of a company's online

2   "Privacy Policy" and "Terms of Service" to show that plaintiff agreed personal

3   information may be disclosed to third parties, contradicting plaintiff's allegation that he

4   did not consent to such disclosure.  *See Garcia*, 78 F. Supp. 3d at 1136 (taking judicial

5   notice of documents showing that user had to agree to the Terms Of Sale before signing

6   up for service); *Porras v. StubHub, Inc.*, 2013 WL 144045, at *3 (N.D. Cal. Jan 11, 2013)

7   (taking judicial notice of StubHub's User Agreement to dismiss claims under California

8   ticket seller statute).  Here, as in *Garcia*, Blizzard's EULA and Terms of Sale are crucial

9   to Plaintiff's Complaint and contradict his allegations that he did not receive adequate

10   notice of Blizzard's refund policy.

11   **II.**     **CONCLUSION**

12        For the reasons set forth above, the Court should take judicial notice of Exhibits 1

13   through 22 attached to the Declaration of Matthew G. Ardoin.

14

15   Dated:  September 10, 2019                  SCHILLING LAW GROUP, PC

16                                                        Charity M. Gilbreth

17                                                        Matthew G. Ardoin

18                                                        Tyler H. Hunt

19

20                                              By: */s/ Matthew G. Ardoin*

21                                                        Matthew G. Ardoin
                                                        Attorneys for ACTIVISION

22                                                        BLIZZARD, INC. and BLIZZARD
                                                        ENTERTAINMENT, INC.

23

24

25

26

27

28

5:19-cv-05540-NC                                        REQUEST FOR JUDICIAL NOTICE;
                                                        DECLARATION OF MATTHEW G.
                                                        ARDOIN
                                              6

### DECLARATION OF MATTHEW G. ARDOIN
### INDEX

| Exhibit | Description |
|---------|-------------|
| 1 | Excerpts from Plaintiff Erik Estavillo's autobiography entitled "The PSN Plaintiff," dated 9/27/2018 |
| 2 | **Case 1** Complaint, filed July 6, 2009, entitled *Erik Estavillo v. Sony Computer Ent. America*, Case No. C09-03007 RMW |
| 3 | Order Granting Defendant's Motion to Dismiss in Case 1, filed September 22, 2009 |
| 4 | **Case 2** Complaint, filed October 14, 2009, entitled *Erik Estavillo v. Sony Computer Entertainment America*, Case No. 2009-1-CV-154691 |
| 5 | Request for Dismissal of Case 2, filed January 29, 2010 |
| 6 | **Case 3** Complaint, filed November 24, 2009, entitled *Erik Estavillo v. Activision Blizzard, Inc.*, Case No. 2009-1-CV-158058 |
| 7 | Request for Dismissal of Case 3, filed January 29, 2010 |
| 8 | **Case 4** Complaint, filed June 4, 2010, entitled *Erik Estavillo v. Apple, Inc.*, Case No. 2010-1-CV-173701 |
| 9 | Request for Dismissal of Case 4, filed June 23, 2010 |
| 10 | **Case 5** Complaint, filed February 25, 2014, entitled *Erik Estavillo v. Insomniac Games, Inc.*, Case No. 14-cv-00839 |
| 11 | Notice of Voluntary Dismissal, Without Prejudice of Case 5, filed April 10, 2014 |
| 12 | **Case 6** Complaint, filed February 25, 2014, entitled *Erik Estavillo v. Insomniac Games, Inc.*, Case No. 2014-CV-261274 |
| 13 | Request for Dismissal of Case 6, filed April 10, 2014 |

| 14 | **Case 7** Amended Complaint, filed March 26, 2019, entitled *Erik Estavillo v. Behavior Interactive/Starbreeze Studios*, Case No. 19-cv-01025 |
| 15 | Report and Recommendation to Dismiss Plaintiff's Amended Complaint in Case 7, dated May 30, 2019 |
| 16 | Order Adopting Report and Recommendation And Dismissing Amended Complaint in Case 7, dated May 30, 2019 |
| 17 | Selected screenshots from Blizzard's website providing general information about Overwatch |
| 18 | Webpage on which a player agrees to the EULA before creating an account with Blizzard |
| 19 | Excerpt of Blizzard's former EULA, dated February 28, 2015 |
| 20 | Excerpt of Blizzard's current EULA, dated January 1, 2018 |
| 21 | Webpage on which a player agrees to the Terms of Sale before purchasing Overwatch |
| 22 | Excerpt of Blizzard's Terms of Sale, last revised January 12, 2015 |

## **DECLARATION OF MATTHEW G. ARDOIN**

I, Matthew G. Ardoin, pursuant to 28 U.S.C. §1746, hereby declare as follows:

1.      I am an associate with the law firm of Schilling Law Group, PC, counsel for Defendants Activision Blizzard, Inc. and Blizzard Entertainment, Inc. in the above-referenced matter.  I have personal knowledge of the facts set forth within this Declaration and if called upon as a witness, could and would competently testify thereto.

2.      I make this Declaration in support of the Request for Judicial Notice in support of the Motion to Dismiss Plaintiff Erik Estavillo's ("Plaintiff") Complaint.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of excerpts from Plaintiff's autobiography entitled "The PSN Plaintiff," dated 9/27/2018.  The PSN Plaintiff may be purchased online at https://www.amazon.com/PSN-Plaintiff-Erik-C-Estavillo/dp/1984556185/ref=olp_product_details?_encoding=UTF8&me=.

4.      Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiff's Complaint entitled *Erik Estavillo v. Sony Computer Ent. America*, Case No. C09-03007 RMW, filed on July 6, 2009, in the Northern District of California, San Jose Division ("Case 1").

5.      Attached hereto as **Exhibit 3** is a true and correct copy the court's Order Granting Defendant's Motion to Dismiss in Case 1 filed on September 22, 2009.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of the Complaint entitled *Erik Estavillo v. Sony Computer Entertainment America*, Case No. 2009-1-CV-154691, filed on October 14, 2009, in Santa Clara Superior Court ("Case 2").

7.      Attached hereto as **Exhibit 5** is a true and correct copy of Plaintiff's January 29, 2010 Voluntary Request for Dismissal of Case 2.

8.      Attached hereto as **Exhibit 6** is a true and correct copy of the Complaint entitled *Erik Estavillo v. Activision Blizzard, Inc.*, Case No. 2009-1-CV-158058, filed on November 24, 2009, in Santa Clara County Superior Court ("Case 3").

9.      Attached hereto as **Exhibit 7** is a true and correct copy of Plaintiff's Voluntary Request for Dismissal filed in Case 3.

10.     Attached hereto as **Exhibit 8** is a true and correct copy of the Complaint entitled *Erik Estavillo v. Apple, Inc.*, Case No. 2010-1-CV-173701, filed on June 4, 2010, in Santa Clara County Superior Court ("Case 4").

11.     Attached hereto as **Exhibit 9** is a true and correct copy of Plaintiff's June 23, 2010 Voluntary Request for Dismissal of Case 4.

12.     Attached hereto as **Exhibit 10** is a true and correct copy of the Complaint entitled *Erik Estavillo v. Insomniac Games, Inc.*, Case No. 14-cv-00839, filed on February 25, 2014, in Northern District of California ("Case 5").

13.     Attached hereto as **Exhibit 11** is a true and correct copy of Plaintiff's April 10, 2014 Voluntary Request for Dismissal of Case 5.

14.     Attached hereto as **Exhibit 12** is a true and correct copy of the Complaint entitled *Erik Estavillo v. Insomniac Games, Inc.*, Case No. 2014-CV-261274, filed on February 25, 2014, in Santa Clara Superior Court ("Case 6").

15.     Attached hereto as **Exhibit 13** is a true and correct copy of Plaintiff's April 10, 2014 Voluntary Request for Dismissal of Case 6.

16.     Attached hereto as **Exhibit 14** is a true and correct copy of Plaintiff's Complaint in the matter of *Erik Estavillo v. Behavior Interactive/Starbreeze Studios*, Case No. 19-cv-01025, filed on March 26, 2019, in Northern District of California ("Case 7").

17.     Attached hereto as **Exhibit 15** is a true and correct copy of the Report and Recommendation to Dismiss Plaintiff's Complaint in Case 7.

18.     Attached hereto as **Exhibit 16** is a true and correct copy of the court's Order Adopting Report and Recommendation And Dismissing the Case in Case 7.

19.     Attached hereto as **Exhibit 17** is a true and correct copy of copy of selected screenshots from Blizzard's website providing general information about the Overwatch game, available at https://us.shop.battle.net/en-us/product/overwatch?blzcmp=ow_buy_header#techspecs

5:19-cv-05540-NC

REQUEST FOR JUDICIAL NOTICE; DECLARATION OF MATTHEW G. ARDOIN

10

20.     When a player creates an account with Blizzard – which is necessary for the customer to access Blizzard's Battle.net and to play Blizzard's games – the player agrees to the End User License Agreement ("EULA").  Specifically, when creating a new account, a player is presented with a webpage that states: "By clicking on 'Create a free account,' [the player] agree[s] to the Blizzard End User License Agreement."  The player may access and review the EULA by simply clicking on the words "End User License Agreement."  Attached hereto as **Exhibit 18** is a true and correct copy of an image of the webpage on which a player agrees to the EULA before creating an account with Blizzard, which is located at https://us.battle.net/account/creation/en/.

21.     Attached hereto as **Exhibit 19** is a true and correct copy of an excerpt of Blizzard's EULA (dated February 28, 2015), which was operative at the time Plaintiff purchased Overwatch on April 25, 2016.

22.     Attached hereto as **Exhibit 20** is a true and correct copy of an excerpt of Blizzard's current EULA (dated January 1, 2018), which is available at https://www.blizzard.com/en-us/legal/fba4d00f-c7e4-4883-b8b9-1b4500a402ea/blizzard-end-user-license-agreement.

23.     Before a player may purchase Overwatch from Blizzard's digital store, he or she must agree to Blizzard's Terms of Sale.  Blizzard's website ensure that players agree to the Terms of Sale by informing players: "By clicking 'Pay Now,' you agree to the Terms of Sale."  The player may access the Terms of Sale on that webpage by clicking the words "Terms of Sale."  Attached hereto as **Exhibit 21** is a true and correct copy of an image showing the webpage on which a player agrees to the Terms of Sale before purchasing Overwatch.  This webpage may be accessed by (1) creating a Blizzard account and (2) attempting to purchase Overwatch on Blizzard's digital store at https://us.shop.battle.net/en-us/product/overwatch?blzcmp=ow_buy_nav.

24.     Attached hereto as **Exhibit 22** is a true and correct copy of an excerpt of Blizzard's Terms of Sale, last revised January 12, 2015.  The Terms of Sale are available

1   online at https://www.blizzard.com/en-us/legal/2173e4b7-3d3c-4c92-96e0-

2   96b332d36eff/terms-of-sale.

3

4           I declare under penalty of perjury that the foregoing is true and correct.

5   Executed on September 10, 2019, in Newport Beach, California, U.S.A.

6                                   _/s/ Mathew G. Ardoin_____
                                    Matthew G. Ardoin
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5:19-cv-05540-NC

SCHILLING LAW
GROUP, PC

REQUEST FOR JUDICIAL NOTICE;
DECLARATION OF MATTHEW G.
12 ARDOIN

# Exhibit 1



# PLAINTIFF

*A Biography*

ERIK C. ESTAVILLO

Copyright © 2018 by Erik C. Estavillo.

ISBN:      Softcover          978-1-9845-5618-9
           eBook              978-1-9845-5617-2

All rights reserved. No part of this book may be reproduced or transmitted in
any form or by any means, electronic or mechanical, including photocopying,
recording, or by any information storage and retrieval system, without
permission in writing from the copyright owner.

Any people depicted in stock imagery provided by Getty Images are models,
and such images are being used for illustrative purposes only.
Certain stock imagery © Getty Images.

Print information available on the last page.

Rev. date: 09/27/2018

**To order additional copies of this book, contact:**
Xlibris
1-888-795-4274
www.Xlibris.com
Orders@Xlibris.com
785830

# CONTENTS

Chapter 1    Life Before Litigation............................................................1
Chapter 2    Estavilo v Sony Computer Entertainment America......14
Chapter 3    Estavilo v Microsoft, Nintendo of America .................21
Chapter 4    Estavilo v Activision Blizzard .........................................25
Chapter 5    Life After Court..................................................................27
Chapter 6    Dedication and Poems......................................................30

## Chapter 2

## Estavilo v Sony Computer Entertainment America

In September 2009, I was banned from the PlayStation 3 Network for trash-talking other players while playing *Resistance: Fall of Man.*

Before this incident, I used to be a very polite gamer and would not even talk online. What may have helped me was that I had a long-distance girlfriend named Mela at the time. She lived in Namibia, South Africa but she kept me grounded; I would mostly vent about any issues I had to her. Once, she told me, "just join the other team and kill the player who was trash-talking you."

Then one day, the icing was put on my cake. I was playing *Resistance: Fall of Man* under the gamertag "Oblivion." I started off playing online with another team that included a female player. At one point in the game, she saw me run in front of her and out of nowhere said, "Oblivion is an idiot." Instantly, I felt the familiar feelings of hurt and shock icily crawl their way through my veins. But, in an attempt to go on with my life, I told myself that I would not let this incident bother me and treat it as if it is no big deal. As I tried to forget about what had happened, I couldn't help but find myself being reminded of how Erica had laughed at me when she found out that I broke my collarbone. It figured that when I was finally almost healed about that incident, the same type of incident had to strike again. I thought to myself though that maybe what happened with Erica made me stronger and gave me some more

willpower. I tried my hardest to decide to let the situation go. I was not going to let anything like that affect me again.

Of course, things do not usually go as planned and sure enough, I found myself still upset and disturbed by this girl's slur two weeks later. I could not fathom why she would call me an "idiot" when I had done absolutely nothing wrong. All I did was move my character. It was at that moment that I realized I had to begin to defend myself to the fullest degree while playing online games. I could not and did not want to let myself become bothered by any other future incidents. Two times in my life was enough. I had to take drastic action.

So, I began to speak my mind. I continued to play *Resistance* online. I was not going to let anyone stop me from that, no matter what they said. I decided that my character "Oblivion" was too nice and created a new one named "Vincent" so that I could defend myself. Vincent was the opposite of Oblivion; a mad scientist creation type. As Vincent, many more girls liked me because of my constant talking and irreverence. I became close with one female player to the point where we would call each other "brother" and "sister." We would play *Resistance* together and make fun of people or just cause general mayhem.

I would say what I wanted; then a moderator kept banning me from the map that I was playing. All of the other players were yelling and saying bad things too, but the moderator kept banning me, as if it were a discriminatory factor solely against me. I kept telling the moderator that I would sue if he or she kept banning me. All of the other players heard me say this. I felt that I had the right to defend myself and say what I wanted in a game that I had spent sixty dollars of my own money on, nonetheless on a console that I had spent five-hundred of my own dollars on.

There are four different ways that Sony can ban a player from the network: through one's account, IP address, MAC address, and by

permanent ban through the serial number on the PlayStation console. I had been banned all three ways and then finally my console as a whole had been banned, making me the first person in history to be punished by the fourth and final type of ban. I decided not to go out and buy a new or used console to avoid the case of having my serial number banned again. What would be the point of that?

Sony alleged that my ban was a result of multiple warnings to my account. However, I had not been given multiple warnings but instead was banned along with a note that served as a warning. As a result of the ban I lost access to being able to play online, lost ten dollars and twenty-two cents worth of pre-paid points, and all of my downloadable content, which was worth over sixty dollars. Some of the downloadable content included games that could only be played online, such as the game Warhawk.

But the worst part of being banned was that I lost the ability to communicate and socialize with other people. Like I had mentioned before, I have no friends. I never had the opportunity to have a LAN party with a group of buds. I never experienced getting to go to a friend's house to spend time together. Most of this is due to my Panic Disorder and Agoraphobia, since I am mostly afraid to go anywhere at all. By nothing being able to play online, it caused me substantial pain and suffering. My only means of communication was gone. I felt devastated.

Due to these factors, I decided to go through with my threats and sue Sony Computer Entertainment America. It's not like I was the first person to do this. There have been earlier cases where people have tried to sue Sony for one reason or another. To sue someone or an entity like Sony, you need to feel extremely angry and have a fire burning in your heart. I had this fire. I felt it constantly burning, crackling and popping deep within my soul. When I closed my eyes at night, I could see the

red, orange, and yellow flames and the black smoke that billowed from them. Nothing could put it out except for justice. A week after I was banned, I wrote and filed the Sony complaint.

In the complaint, I claimed that my First Amendment rights were violated when I was banned from the public forum. Under the First Amendment of the United States Constitution, an individual's free speech is protected. It seemed like all of the other players got to freely express their minds. I should not have been excluded from this right. The ban also led to the theft of my pre-paid points and downloaded content. I believe that Sony and its moderators are given too much power. I don't think that the reason for the bans are specific enough, an issue that I knew I definitely wanted to address in court, too. Finally, I wanted to address the issue that the End User License Agreement that everyone clicks on for playing *Resistance* online does not work in blocking players who are under seventeen. This was important because the game has an "M for Mature" rating and is not even supposed to be sold to anyone under the age of seventeen. I even planned on subpoenaing two parents of a couple of pre-teens I knew who were allowed to play online.

I took this case head-on and underrepresented. Sony was represented by a lawyer named Richard Mooney. At first, I tried to obtain a lawyer. I looked into about ten to fifteen of them. Most of them viewed my case too lightly and did not take it as seriously as I did. They kind of just laughed me off as to say, "no thanks." Again, I felt the spikes of rejection bite into me. First I had been laughed at by a girlfriend. Then a random girl online. And now, professional lawyers. I decided that most lawyers are just professional jerks, anyway. I didn't need one. Therefore, I decided to just represent myself.

On the topic of representing myself, I found the matter quite easy, even though one lawyer told me that I was definitely going to need

help. Filing all of the paperwork was not hard at all and it led me to believe that lawyers are not even needed in matters such as this one. All I needed was myself, although my family was very supportive of my decision. When I gave my opening statement to Judge Ronald M. Whyte, my father clapped for me. He said that I seemed fearless to the judge and he was proud of me for standing up for my consumer rights. He was happy to see that I was not afraid of anyone. It was about time that I proved that I was not afraid of anyone. I had to show the world that I was not going to be rejected by everything and everyone for the rest of my life.

The case first went to Federal court. I sought $55,000 in damages and wanted Sony's ability to ban or block players limited. Of course, Sony filed a motion to dismiss my case under the circumstances that I did not have sufficient facts to prove that my First Amendment rights were violated. Also, I had insufficient justification for all of my other claims.

Sony argued that the First Amendment does not apply to the PlayStation Network because it is not part of the government and it does not behave like a town or municipality. I cited a blog and two cases to prove that online gaming forums do reflect a public function with regard to the First Amendment, but the court agreed with Sony. I failed to compare Sony to the State or Federal government. The court also ruled that a complaint must be dismissed unless the plaintiff has enough factual matter to state a claim where relief can be granted.

I wanted to use the Pruneyard doctrine to help me argue that my First Amendment rights are protected on private property. Although Sony was not based out of California, the online servers are accessible in every state. The court acknowledged that there was a small exception for company towns where a private corporation acts as the government. The court found that Sony was not considered to be a company town

and that it was more like a forum where people could interact with each other.

Since the complaint that my First Amendment rights were violated was dismissed, Sony argued that if the court dismissed one count on the complaint, it should dismiss all of them. My case was essentially tossed out of court.

I told Judge Whyte to his face that I was unhappy about his decision. He told me that if I didn't like his decision that I could appeal it. I went right downstairs to the clerk's office and filed an appeal. Since I did not explain why the Appellate Court of the Ninth District should reconsider the decision, my appeal was once again dismissed. I also filed a civil suit against Sony for $180,000. I sued for more money this time because Sony's lawyer told me that I had to sue for at least $75,000 in order for the case to even be heard. The civil suit was heard in State court. During this suit, I subpoenaed two rappers, Lady Sovereign and Krayzie Bone, to testify. I picked these two celebrities to demonstrate how rappers are allowed to curse and trash-talk on private property such as clubs and concerts without being banned or censored.

When I went to court, I dressed in a suit that similarly resembled *The Joker* from the *Batman* series. I used this reference at the time because I looked up to Heath Ledger, who played *The Joker* on-screen. I felt I could relate to him because by playing the role of *The Joker*, he knew how lonely and depressing life can be. In the movie *The Dark Knight*, his character showed a sense of apathy and sloth about life in general. It seemed as if he had been so let down in life, as I have, and that he did not care about anything anymore which in essence made him stronger. Due to my panic attacks in early 2008, I began to become very scared and anxious. Later that year, *The Dark Knight* came out and allowed me to find a new strength within myself by following the philosophies of *The Joker*. I found that laughing instead of being "so serious" was

a great way to cope about things. *The Joker* indirectly helped me cope with my panic disorder by helping me become apathetic like he was. The other two great philosophies he had that helped me immensely are his two quotes, "I believe whatever doesn't kill you...simply makes you, stranger" and his other quote that life, "Is not about money...but about sending a message".

## Chapter 3
## *Estavillo v Microsoft, Nintendo of America*

Sending a message is exactly what I wanted to do. I wanted to exploit that weaknesses of each console so that the video game companies would fix them. I wanted to bring these companies to light through the news so that they would be forced to develop better customer service. In a sense, I was almost like a video game activist who was fighting for gamers' rights. It would have been better if I was not impaired by my medical conditions, though. Then maybe I could have fought harder.

In November 2009, I decided to use Microsoft and Nintendo as my starting point. I filed a Federal complaint in the United States District Court against Microsoft because I awoke one morning to find that my Xbox 360 console fell victim to the legendary "Red Ring of Death."

The "Red Ring of Death" occurs when three flashing lights form around the Xbox 360 logo, signifying a general error instead of the traditional four green lights, which indicate normal operation. Although this error code can mean that the console is not gaining enough power through a faulty power supply, the error usually occurs after there has been an internal hardware failure.

When the console was first released, Microsoft boasted that the hardware only had a failure rate of 3-5% but never released official statistics. In July 2007, Microsoft publicly announced that there would

be a three-year warranty from the date of the original purchase of each Xbox 360 console for every case of the red flashing lights. Several sources with connections to Microsoft claimed that many of the defects occurred due to bad system designs, part supply, and an inadequate means of testing the system before its release. Another source claimed that out of every one hundred systems released, over half of them were found to be defective. In February 2008, Microsoft claimed that the failure rate had officially decreased. The company has never officially released any information regarding the true cause of the problem.

For me to get my Xbox 360 fixed, it would have cost me well over one hundred dollars plus the time I would have had to waited for it, which generally takes up to a month. I had done nothing to receive the "Red Ring of Death." My console was not tampered with and I even offered to provide the serial number on the console as evidence that the system belonged to me.

I felt that Microsoft should have to be responsible for providing me with a free solution to this problem. I already could not afford to fix the console myself or even buy a new one. My medical conditions were also affected by my lack of socialization in the online community and I felt as though I should not have to pay to get it back. I decided to put forth my Seventh Amendment rights, which allows me a trial by jury, particularly because the value of my console was over twenty dollars.

I chose to subpoena Bill Gates, the CEO of Microsoft in an attempt to uncover the truth about the causes of the "Red Ring of Death." I wanted him to testify and reveal the truth about how many consoles were affected and how many were fixed by Microsoft over the past three years. Since Microsoft was keeping secrets from the general

public and I felt as if they had negligently sold me my Xbox 360. I sought $75,000 in damages from Microsoft. It caused me additional pain and suffering because it hindered my ability to socialize online with others. It also caused me undue stress and sadness from having to waste time trying to find a way to get my Xbox 360 repaired. Also, like the digital content that I had lost when I was banned from the PlayStation Network, I lost all of my unrecoverable game saves and downloads. Microsoft eventually repaired my system for me but only after all of the press.

As if things could not get any worse, my life was then slammed by Nintendo. Through an update to my Nintendo Wii system, my Homebrew channel was rendered useless.

The Wii Homebrew is a third-party software that can be installed onto the system in order to help players unlock certain levels, characters or achievements. I only used this software, known as "Update 4.3," to help myself unlock certain characters in *Mario Kart*. The only reason I was using this to help me was because there are some characters that you cannot unlock in *Mario Kart* without purchasing *Super Mario Galaxy* and even then, that only unlocks one character.

I just don't believe it is right or fair that Nintendo forces its consumers to purchase one game in order to unlock a character in a different game. Essentially, it is like having to spend over fifty dollars just to get to play with one character. And for the one game to just unlock one character when there are multiple characters is a ridiculous concept. What is the point of even having unlockable characters when they can only be unlocked with a software that Nintendo has blocked?

I felt that Nintendo's actions of blocking my Homebrew channel severely interfered with my pursuit of happiness, which I am entitled

*Erik C. Estavillo*

to under the United States Declaration of Independence. As a result of this interference, I sought $5,000 from Nintendo. I also wanted Nintendo to be prohibited from blocking third-party software from its systems.

### *Chapter 4*
### *Estavillo v Activision Blizzard*

My last and final lawsuit concerned Activision Blizzard, the company that is best known for its massive multiplayer online role-playing game *World of Warcraft*. I was inspired to sue Activision Blizzard because I felt that the company was being sneaky and deceitful to its players.

For example, the characters' speed of walking in the game is one of those sneaky practices. I felt as though the characters were programmed to walk too slow therefore making it too long to get from one point to another in the game. Since playing online for this game requires a paid subscription, Activision Blizzard makes a lot of its money off of players who have not finished the game yet and need to renew their subscription. The only way to speed up is through extended play or by buying an expansion pack. I felt that this was deceitful because similar to Nintendo, Activision Blizzard was in essence forcing its players to buy one product in order to benefit in a product that they already have.

I also felt that since I suffer from multiple disorders and illness, I might have been at risk of sharing the same fate as Shawn Woolley, an *Everquest* player who committed suicide on Thanksgiving morning in 2001. I felt that I had something in common with Shawn since he too suffered from an illness. His condition was that he had epilepsy and was prone to having seizures.

My subpoenaed celebrities for this case were Martin Lee Gore from the band Depeche Mode and the actress Winona Ryder. I wanted

them to testify on the subject of alienation. I picked Martin Lee Gore because I could tell through his music and lyrics that he is sad, lonely, and alienated. Back in 2006, my father and I attended a Depeche Mode concert and got to sit right in the front, where I could really take in the message from their music. I picked Winona Ryder because we both are familiar with the J.D. Salinger's novel, "The Catcher in the Rye," and I believed that she would be able to explain how the themes of alienation in that book could relate to alienation in video games.

Winona Ryder was definitely my most interesting subpoena. Since she had a past criminal history and had to register all of her information, I was able to look up her phone number on Intellius database. I actually called her house but her boyfriend at the time answered and he would not let me talk to her. We had a little argument and then he called Winona while she was on the set of "Black Swan" and had her call her lawyer. Her lawyer really did call me and when he did I said, "Uh oh spaghettios," to which he demanded to know if I was a kid. I told him I was recording the conversation which he took offense too and told me that it was illegal. I knew it and I told him out of spite. The lawyer did not find the situation as funny as I did and threatened to slap me with a restraining order if I did not back off. Needless to say, I never called her again.

## Chapter 5
## *Life After Court*

I ended up dropping all of my cases. The first Sony case was the only one ever to be heard in court. This decision mostly came out of the fact that my Crohn's Disease and Panic Disorder were beginning to become very bad. I decided to let each lawsuit go in order to try and improve my conditions.

I did take a stab at one last final lawsuit in which I tried to sue several websites for libel because many of the articles on their websites were full of insults toward me. I sought $10,000 per article written against me. The only websites that I found to have written fair and non-insulting articles about me were GamePolitics and The Escapist. I also wanted to charge QJ.net and SarcasticGamer.com with worker discrimination because both sites agreed to hire me as an unpaid writer and then never contacted me again.

I decided to drop all of those lawsuits as well, though. I have made a pretty decent online presence in the light of my lawsuits. There are so many online articles written about me that are plastered with comments. Whenever my illnesses have me feeling down or if I just need to feel a smile on my face, I have just learned to go back and read some of the articles and what people have to say about me, even if most of the comments are on the negative side.

Everybody loves attention no matter what kind it is. I know I have made a difference whether it is good or bad. In my opinion, I believe that I have made a good difference. Whenever I see any negative

attention that I have stirred up, I usually just laugh it off or smile at it mischievously. I have a few supporters but I have never talked to them online. Their comments are mostly along the lines of calling me a consumer hero or giving me props for suing Microsoft and subpoenaing Bill Gates.

I inquired about an internship for one of the more neutral websites about me, GamePolitics, but they told me that I made a name for myself and my credibility was mostly shot. I believe that part of the reason why I became so infamous was because I did not know anything about the law when I sued. Many people seemed to be impressed at the fact that I was able to write and file a complaint, call for subpoenas, and appeal court decisions all by myself. All I had to do was research some law online, read a few books, and that was it. I think that is part of the allure; that I had no law experience at all and yet I overcame and fought the court system pretty well.

As for the subpoenaed celebrities, none of them ever showed up. It is hard to subpoena a celebrity for several reasons. First, it is hard to even get close to them since most of their houses are gated off and surrounded by security. A more strategic way to contact them is to subpoena someone close to them, like an agent or manager. Each subpoena cost me around seventy dollars with no guarantee. Deep down inside, I knew that the chances of the celebrities actually showing up would be slim. I mainly did it to help my cases gain national attention. I had to stop calling Winona Ryder for obvious reasons. I never heard from the two rappers or Bill Gates. Since only the first Sony case ever made it to court, none of the celebrities had to show up legally.

If I had won any of the money, I would have given half of it away to local churches, charities, and the poor. I would have used the other half of the money to either buy a house or open a church, since I am

still a devout Christian. I have also considered donating some money to medical research to help scientists find a cure for my conditions. As we all know, I never did win any of the money, although it would have been nice.

As far as my PlayStation 3 goes, the first console that inspired me to begin suing these companies, I eventually had to break down and buy a brand new console. I recently bought the new Wii U which I have been spending a lot of time playing. In terms of public attention, I am barely ever recognized because I never put my picture online. The only place that I am recognizable in is in the game *Resistance*, where it all started. I still talk to some old friends who I knew before my lawsuits. As far as the media goes, NBC wrote two articles on me and FOX Sacramento wrote one. These days, no one ever calls me or comes knocking at my door, although sometimes I wish they would; it's getting pretty lonely just playing video games all of the time.

# Exhibit 2

Erik Estavillo
3284 Cortese Circle
San Jose, CA 95127
(408) 926-7224

Plaintiff

**FILED**

2009 JUL -6 A 8: 05

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

ADR

IFP
NP

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

## C09 03007

| | |
|---|---|
| ERIK ESTAVILLO, | ) Case No. _____ HRL |
| | ) |
| Plaintiff, | ) COMPLAINT |
| | ) |
| vs. | ) DEMAND FOR |
| | ) JURY TRIAL |
| SONY COMPUTER | ) |
| ENTERTAINMENT AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

1.  **Jurisdiction.** At least one of the plaintiffs' claims arises under the Constitution, laws, or treaties of the United States (28 U.S.C. § 1331). This case involves the plaintiff's First Amendment Right to Freedom of Speech in a public forum.

2.  **Venue.** Venus is appropriate in this court because the defendant resides in Foster City, California. While the disabled plaintiff resides in San Jose, unable to travel to Foster City.

3.  **Intradistrict Assignment.** This lawsuit should be assigned to the San Jose Division of this Court because it was in San Jose that these events and violations to the plaintiff occurred.

1. At least one of the plaintiffs' claims arises under the Constitution, laws, or treaties of the United States (28 U.S.C. § 1331) or federal question jurisdiction. This case involves the plaintiff's First Amendment Right to Freedom of Speech in a public forum.

2. The Northern District of California has jurisdiction to decide this case because the plaintiff resides in San Jose, California, where the events occurred; also, the plaintiff is disabled and unable to travel to Foster City, California, where the defendant resides.

3. The plaintiff in this case is Erik Estavillo, an alumnus of UCLA. As the defendant in this case is Sony Computer Entertainment America.

4. Sony Computer Entertainment America has caused pain and suffering to an already disabled plaintiff, whom suffers from Obsessive-Compulsive Disorder, Panic Disorder, Major Depression, and Crohn's Disease. The pain and suffering was caused by the defendant, Sony, banning the plaintiff's account on the PlayStation 3 Network, in which the plaintiff relies on to socialize with other people, since it's the only way the plaintiff can truly socialize since he also suffers from Agoraphobia. The plaintiff has convincing medical documents to prove all of his diseased conditions.

5. The ban is supposedly due to the behavior of the plaintiff when he plays the video game "Resistance: Fall of Man," which Sony owns and employs moderators for its online play. These moderators kick and ban players that they feel are deserving; though their biases to a player seems to be what determines the kick or ban from the Resistance game server. The need for moderators on Resistance is unnecessary since other players can both mute and/or ignore any player they wish.

6. In this first count, the plaintiff was exercising his First Amendment Right to Freedom of Speech in the game's public forum when he was banned from, not only the Resistance video game, but also banned from playing all other games online via the PlayStation Network. Sony's PlayStation 3 is the only gaming system that incorporates this type of wide-ranged ban. As where Nintendo does not ban customers at all. And Microsoft Xbox rarely bans, and only for repeated illegal offenses.

7. In the second count, the plaintiff had also had just purchased the PlayStation 3 and Resistance video game in the year 2009, and has already been quickly and unjustly banned from playing any games online, even though he has also purchased many PlayStation Network Redeem Cards in the amounts of $20. The plaintiff would then redeem a card using the redeem code, which would add money to his PlayStation Network Wallet Fund, which is where money is saved for future use. The plaintiff and many other players who are unfairly banned cannot access their money when a moderator from Resistance and Sony gives a player an arbitrary wide-range ban from the PlayStation 3 Online Network, which in essence, is stealing money from the player.

8. In the last count, the defendant Sony is using Resistance's Online User Agreement as its reason for banning players for as long as Sony wishes the ban to last. The problem, however, is with the Online User Agreement itself in the sense that it is intended for players aged 17+; being that the game is rated for only mature audiences. However, children often play this game, and some are even as young as 13 years old (age verification can be proven via subpoena). Yet, the Resistance Online User Agreement is easily bypassed by these young teenagers by simply pressing the "agree" button. Resistance does not filter who gets online and plays their video game. So in essence, their whole Online User Agreement is ineffective and in breach of the 17+ year old rating.

9. **Prayer for Relief:** The plaintiff hopes the federal court will impose an injunction on Sony and its video game "Resistance: Fall of Man" from banning any players in any form since their bans are harmful in the sense that they do not allow players from accessing their money which is located in their online PlayStation Network Wallet Fund via the PlayStation Network; moreover, moderators are not truly needed since a mute and ignore feature already exist for the game, allowing players to mute or ignore any player they do not want to hear or interact with.

10. The plaintiff hopes for pain and suffering damages along with punitive damages in the amount of 55,000 dollars. The plaintiff also

wishes for all additional relief to which the plaintiff is entitled. The plaintiff has video evidence to help prove his case.

11. The plaintiff demands a jury on all issues.

# Exhibit 3

1

2

3

4                                                      **E-FILED on** ___9/22/09___

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12  ERIK ESTAVILLO,                        No. C-09-03007 RMW

13               Plaintiff,

14         v.                             ORDER GRANTING DEFENDANT'S
                                          MOTION TO DISMISS
15  SONY COMPUTER ENTERTAINMENT
    AMERICA,                              **[Re Docket No. 9]**
16
                 Defendant.
17

18

19         Defendant Sony Computer Entertainment America Inc. ("Sony") moves to dismiss plaintiff's

20  claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to allege facts sufficient to

21  state a First Amendment claim against Sony, and for insufficient justification for the exercise of

22  supplemental jurisdiction over the remaining claims.  Having considered the papers submitted by the

23  parties and the arguments of plaintiff Estavillo and counsel for Sony, and for good cause appearing

24  for the reasons set forth below, the court grants the motion.

25                              **I.  BACKGROUND**

26         Plaintiff was banned from Sony's Playstation 3 Network (the "Network") after participating

27  in its public forums.  (Compl. ¶ 6.)  This ban, which was purportedly due to plaintiff's alleged

28  multiple violations of the agreement governing his use of the Network (Compl. ¶ 5; Def.'s Mot. 1),

*United States District Court*
*For the Northern District of California*

1    allegedly caused the plaintiff substantial pain and suffering.  (Compl. ¶ 4.)  As a result, plaintiff

2    alleges three counts against Sony.  The first claims that the ban violates plaintiff's First Amendment

3    free speech rights.  (Compl. ¶ 6.)  The second two counts allege what appear to be contract-related

4    claims.  (Compl. ¶¶ 7, 8.)  Plaintiff prays for $55,000 in relief for these counts, along with

5    "additional relief to which the plaintiff is entitled."  (Compl. ¶ 10.)

6                                              **II.  ANALYSIS**

7    **A.      Estavillo's complaint does not contain sufficient factual matter to state a**

8    **          plausible federal claim to relief.**

9             Sony argues that the First Amendment does not apply to the Network because Sony is not

10   part of the government, does not behave similarly to a municipality, and does not have either a

11   functional or structural nexus to the government.  (Def.'s Mem. 1-2.)  Estavillo cites a blog posting

12   and two cases to argue that online gaming forums carry out a public function within the meaning of

13   the First Amendment.  (Pl.'s Opp. 3-4.)  The court agrees with Sony.

14            Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a

15   plaintiff's allegations fail to state a claim upon which relief can be granted.  To survive a motion to

16   dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to

17   relief that is plausible on its face."  *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1940 (2009).  A

18   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

19   the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*.  In deciding a

20   motion to dismiss, the court must accept as true all factual allegations, but not legal conclusions, in

21   the complaint.  *Id.* at 1949.

22            The First Amendment guarantee of free speech is only a guarantee against abridgment by

23   state or federal governments, and not private actors.  *Hudgens v. N.L.R.B.*, 424 U.S. 507, 513 (1976).

24   However, the Court has acknowledged an exception for company towns where the private

25   corporation behaves similarly to a municipality by performing as if they were the government in a

26   company town.  *Id.* at 513-14 (citing  *Marsh v. Alabama*, 326 U.S. 501 (1946)).  This exception is

27   narrow, and does not extend to public areas such as shopping malls.  *Id.* at 519-20 (citing *Lloyd*

28   *Corp. v. Tanner*, 407 U.S. 551 (1972)).

1    A second exception exists where a private corporation has "a sufficient structural or

2    functional nexus to the government." *Hall v. Am. Nat'l Red Cross*, 86 F.3d 919, 921 (9th Cir. 1996).

3    A structural nexus exists "(1) when the corporation is created for the furtherance of governmental

4    objectives and (2) when government retains for itself permanent authority to appoint the majority of

5    directors of the corporation." *Id.* When considering whether a functional nexus exists, a court

6    considers "(1) the nexus between the government and the challenged action, (2) whether the alleged

7    government actor performed functions traditionally reserved to the government, and (3) whether the

8    government coerced or encouraged the challenged action." *Id.* at 922.

9    Sony's Network is not similar to a company town. The Network does not serve a substantial

10   portion of a municipality's functions, but rather serves solely as a forum for people to interact subject

11   to specific contractual terms. Every regulation Sony applies in the Network is confined in scope

12   only to those entertainment services that Sony provides. Although the Network does include "virtual

13   spaces" such as virtual "homes" and a virtual "mall" that are used by a substantial number of users

14   (Pl.'s Reply in Supp. of Opp'n. to Dismiss 1), these "spaces" serve solely to enrich the entertainment

15   services on Sony's private network. In providing this electronic space that users can voluntarily

16   choose to entertain themselves with, Sony is merely providing a robust commercial product, and is

17   not "performing the full spectrum of municipal powers and [standing] in the shoes of the State."

18   *Hudgens*, 424 U.S. at 519 (quoting *Lloyd Corp. v. Tanner*, 407 U.S. 551, 568-69 (1972)).

19   Sony does not have a sufficient structural or functional nexus to the government. Plaintiff

20   has not suggested that Sony is part of the state or federal government. The Network was not created

21   to further government objectives. The government retains no permanent authority to appoint any

22   directors of Sony or the Network, or any other private body associated with the Network. There is

23   no indication that Sony has assumed functions traditionally reserved to the government, or that the

24   government had any part in encouraging Sony to create the Network. Count one of the complaint

25   does not state a plausible First Amendment claim for relief, and therefore must be dismissed. *Iqbal*,

26   129 S.Ct. at 1940.

27

28

United States District Court
For the Northern District of California

1    **B.      There is insufficient justification to exercise supplemental jurisdiction over the**

2              **remaining claims.**

3         Sony argues that if the court dismisses count one of the complaint, then the court should

4    decline to exercise supplemental jurisdiction over the remaining counts because there is no

5    independent jurisdiction to hear them.  (Def.'s Mem. 4-5.)  The two claims are state law claims for

6    breach of contract, and the amount in controversy is alleged to be $55,000.

7         When deciding whether to exercise supplemental jurisdiction over pendant state-law claims,

8    a federal court must consider and weigh "the values of judicial economy, convenience, fairness, and

9    comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  If the balance of these factors

10   show that a case belongs in state courts, which is likely the case where all federal law claims drop

11   out in a lawsuit's early stages, the court should decline the exercise of jurisdiction by dismissing the

12   case without prejudice. *Id.*

13        This case is in its early stages, and with the dismissal of the federal first amendment claim, it

14   is appropriate for the court to decline to exercise its supplemental jurisdiction to hear the remaining

15   state law claim.  Accordingly, the remaining state law claims are dismissed without prejudice.

16

17                                        **III.  ORDER**

18        For the foregoing reasons, the court grants defendant's motion to dismiss without prejudice to

19   plaintiff's refiling his state claims in state court.

20

21   DATED:        9/22/09                          *Ronald M Whyte*

22                                                 RONALD M. WHYTE
                                                   United States District Judge

23

24

25

26

27

28

1   **A copy of this document has been mailed to:**

2   **Plaintiff:**

3   Erik Estavillo
    3284 Cortese Circle
4   San Jose, CA 95127

5

6   **Notice of this document has been electronically sent to:**

7   **Counsel for Defendants:**

8   Richard Mooney          rmooney@linerlaw.com

9

10  Counsel are responsible for distributing copies of this document to co-counsel that have not
    registered for e-filing under the court's CM/ECF program.
11

12

13
    **Dated:**    9/2209                              TER
14
                                        **Chambers of Judge Whyte**
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

# Exhibit 4

Case Name: _____  Case #: **109CV154691**

1  Your Name: Erik Estavillo

2  Your Address: 3284 Cortese Circle

3  San Jose CA. 95127

4  Your Phone Number: 408-926-7224

5  Self-Represented

6

M. Rosales

7  SUPERIOR COURT OF CALIFORNIA

8  COUNTY OF SANTA CLARA    **109CV154691**

CIVIL DIVISION

9

10  Case No.: _____

11  Erik Estavillo    PLEADING TITLE:

12  **Plaintiff** ,    Civil Complaint

13  And    _____

14  Sony Computer Entertainment    _____

15  **Defendant** America    Judge: _____

16

17

18

19

20

21

22

23

24

25

Pleading Title: Civil Complaint    Page 1 of 2

36

Case Name: _____     Case #: _____

In my first count against SCEA,
I am accusing them of violating
my California Constitutional right
to free speech in their public
domain known as a "company town."

In my second count against Sony,
I am accusing them of theft
of my money located in their
PlayStation Network, which they
have banned me from accessing.

In the last count against Sony,
I am accusing them of having
a too laxed age verification system
for their Video Games on the
PlayStation 3 Network. Kids as
young as 13 can easily bypass
the terms of service with a
simple click of a button.

Since I suffer from a number of
disorders such as Agoraphobia, OCD,
Panic Disorder, Major Depression;
Crohn's Disease I am asking to be award
damages along with punitive damages for $180,000.

Pleading Title: __Civil Complaint__     Page _2_ of _2_

# Exhibit 5

**CIV-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Erik Estavillo
3284 Cortese Circle
San Jose, CA 95127

TELEPHONE NO.: 4089267224     FAX NO. (Optional):
E-MAIL ADDRESS (Optional): uy1uy1uy@hotmail.com
ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 190 N. First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95127
BRANCH NAME: Downtown Superior Court

PLAINTIFF/PETITIONER: Erik Estavillo

DEFENDANT/RESPONDENT: Sony Computer Entertainment America

### REQUEST FOR DISMISSAL

- [ ] Personal Injury, Property Damage, or Wrongful Death
  - [ ] Motor Vehicle     [ ] Other
- [ ] Family Law     [ ] Eminent Domain
- [✓] Other (specify) : California Constitution Amendment Question

CASE NUMBER:

1090v 154611

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) [ ] With prejudice   (2) [✓] Without prejudice
   b. (1) [ ] Complaint         (2) [ ] Petition
   (3) [ ] Cross-complaint filed by (name):                    on (date):
   (4) [ ] Cross-complaint filed by (name):                    on (date):
   (5) [✗] Entire action of all parties and all causes of action
   (6) [ ] Other (specify):*

2. (Complete in all cases except family law cases.)
   [✓] Court fees and costs were waived for a party in this case. (This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed).

Date: January 29th, 2010

Erik Estavillo
_____              ▶ _____
(TYPE OR PRINT NAME OF [ ] ATTORNEY [✓] PARTY WITHOUT ATTORNEY)          (SIGNATURE)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
[✓] Plaintiff/Petitioner          [ ] Defendant/Respondent
[ ] Cross-Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
   Date:

_____              ▶ _____
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)          (SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
[ ] Plaintiff/Petitioner          [ ] Defendant/Respondent
[ ] Cross-Complainant

(To be completed by clerk)
4. [✓] Dismissal entered as requested on (date):   JAN 29 2010
5. [ ] Dismissal entered on (date):                as to only (name):
6. [ ] Dismissal **not entered** as requested for the following reasons (specify):

DAVID H. YAMASAKI
Chief Executive Officer/Clerk

7. a. [ ] Attorney or party without attorney notified on (date): JAN 29 2010
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to be conformed    [ ] means to return conformed copy

Date:   JAN 29 2010                                        _____, Deputy

G. Duarte

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. July 1, 2009]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

Page 1 of 2

39

CIV-110

| PLAINTIFF/PETITIONER: Erik Estavillo | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Sony Computer Entertainment America | |

## Declaration Concerning Waived Court Fees

> The court has a statutory lien for waived fees and costs on any recovery of $10,000 or more in value by settlement, compromise, arbitration award, mediation settlement, or other recovery. The court's lien must be paid before the court will dismiss the case.

1. The court waived fees and costs in this action for *(name)*: Erik Estavillo

2. The person in item 1 *(check one)*:
   a. ☑ is not recovering anything of value by this action.
   b. ☐ is recovering less than $10,000 in value by this action.
   c. ☐ is recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and costs that were waived in this action have been paid to the court *(check one)*: ☑ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: January 29th, 2010

Erik Estavillo

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☑ PARTY MAKING DECLARATION)          ▶          *(SIGNATURE)*

# Exhibit 6

Case Name: Erik Estavillo vs. Activision Blizzard Inc.   Case #: _____

1   Your Name: Erik Estavillo

2   Your Address: 3284 Cortese Circle

3   San Jose, CA 95127

4   Your Phone Number: (408) 926-7224

5   Self-Represented

6

7                    SUPERIOR COURT OF CALIFORNIA

8                    COUNTY OF SANTA CLARA           M. Rosales

                           CIVIL DIVISION

9                                              109CV158058

10                                       Case No.: _____

11   Erik Estavillo                      PLEADING TITLE:

12        Plaintiff,                      Civil Complaint

13          And

14   Activision Blizzard Inc.            _____

15        Defendant                      Judge: _____

16

17

18

19

20

21

22

23

24

25

     Pleading Title: _____              Page 1 of 3

1. The plaintiff, Erik Estavillo, would like to charge Activision Blizzard's game, "World of Warcraft" with deceitful business practices since the company has, and continues to maintain a harmful virtual environment to many of its customers by forcing them to follow the game's sneaky and deceitful practices which will be listed below.

2. Firstly, there have been and will continue to be beginning gamers that will not avidly play World of Warcraft during the first free initial month. However, at the beginning of the second month, the game starts charging a monthly rate of nearly $15 a month ($14.99) which is the highest cost among all online MMORPG's, (Massively multiplayer online role-playing games); even more than Final Fantasy XI which is another popular mmorpg that only charges $12.95.

3. The problem itself is not so much the per-month cost, but the fact that the game is designed for a gamer to walk or run at a calculated slow pace, resulting in the player taking longer to get where he or she needs to get in the game, meaning Activision Blizzard benefits and profits since the longer a player walks or runs at that slow pace, the longer it takes them to finish the game, hence, the inevitable charging of additional months on a player's account.

4. Secondly, there is no fast transportation in the game until a gamer's character levels up significantly. Fast transportation in the game can only be done via a "teleportation stone" or a creature that you can attain and ride. The problem being that these "stones" and ride-able creatures, again, aren't available unless you level your gaming character up significantly or buy expansion packs for the game such as "The Burning Crusade" or "Wrath of the Lich King". Hence Activision is forcing the gamer to pay for expansion packs which will unlock creatures that the player can ride so he can get to a gaming location faster. Also, when a player dies in World of Warcraft, he is automatically transported to a cemetery where he must then walk or run back slowly to where his character died. This is an unnecessary part of the game that just takes up more time on the gamer's watch/price plan. The gamer should "resurrect" where he died, saving the gamer valuable time and real life money.

5. Thirdly, the game charges the customer for simply changing something as simple as a character's faction, race, name, or to even transfer the character to another realm within the game – which can be priced as high as $25.00 each time you do it.

6. Fourthly, there have been cases of people killing themselves over mmorpg's. One such case is of Shawn Woolley, who was diagnosed with ADD and epilepsy but controlled it by medicine; until he started the game "EverQuest". His mother, Liz, noticed he quit his job. Then, she discovered Shawn would rather pay the game's monthly fee instead of pay the rent. Hence, Shawn was evicted from his apartment. While living with his mother, Shawn had seizures often when playing the game for long periods of time. From there, Liz sent him to a voluntary group

pg. 2 of 3

home for addictive behavior. Of course, Shawn left. Soon, he purchased a gun, which his mother did not know about. After breaking his door's chain lock with a crowbar, his mother found him dead, and the game was still running. Shawn was surrounded by pizza boxes and notes strewn everywhere pertaining to the game. His mother had decided "that damn game" had killed him. This kind of case of alienation occurs often in games like World of Warcraft.

7. Lastly, there was another case in which a Korean couple went to play World of Warcraft at an Internet cafe and they found their child dead from suffocation. All of these cases can be researched/googled for verification.

8. The plaintiff filing this complaint suffers from mental health problems, similar to those of Shawn Woolley. These include Major Depression, Obsessive-Compulsive Disorder, Panic Disorder, Agoraphobia, and a physical ailment called Crohn's Disease. The plaintiff doesn't want to end up like Shawn did as he relies on video games heavily for the little ongoing happiness he can achieve in this life, via the gaming medium.

9. **Prayer for Relief**: The plaintiff is seeking $1,000,000 in punitive damages from Activision Blizzard Inc. for creating a game which hurts gamers rather than being a bridge of entertainment for them to pursue happiness.

10. The plaintiff is also seeking relief for himself, as well for other customers of the game by asking that the court demand Activision Blizzard fix its game, World of Warcraft, by fixing the problems listed above - which can easily be done.

11. The plaintiff asks for a jury to be present for all issues.

Erik Estavillo

Erik Estavillo

Pg. 3 of 3

# Exhibit 7

**CIV-110**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

Erik Estavillo
3284 Cortese Circle
San Jose, CA 95127

TELEPHONE NO.: 4089267224     FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):* uy1uy1uy@hotmail.com
ATTORNEY FOR *(Name):*

FOR COURT USE ONLY

FILED

2010 JAN 29 A 2 59

G. Duarte

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara
STREET ADDRESS: 190 N. First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95127
BRANCH NAME: Downtown Superior Court

PLAINTIFF/PETITIONER: Erik Estavillo

DEFENDANT/RESPONDENT: Activision Blizzard

| **REQUEST FOR DISMISSAL** |
|---|
| ☐ Personal Injury, Property Damage, or Wrongful Death |
| ☐ Motor Vehicle ☐ Other |
| ☐ Family Law ☐ Eminent Domain |
| ☑ Other *(specify)* : California Constitution Amendment Question |

CASE NUMBER:

109 CV 158058

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice   (2) ☑ Without prejudice
   b. (1) ☐ Complaint   (2) ☐ Petition
   (3) ☐ Cross-complaint filed by *(name):*                           on *(date):*
   (4) ☐ Cross-complaint filed by *(name):*                           on *(date):*
   (5) ☒ Entire action of all parties and all causes of action
   (6) ☐ Other *(specify):**

2. *(Complete in all cases except family law cases.)*
   ☑ Court fees and costs were waived for a party in this case. *(This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed).*

Date: January 29th, 2010

Erik Estavillo                                                    ▶  *Erik Estavillo*
........................................................................
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☑ PARTY WITHOUT ATTORNEY)                    (SIGNATURE)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
☑ Plaintiff/Petitioner         ☐ Defendant/Respondent
☐ Cross-Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
   Date:

                                                                 ▶
........................................................................
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                    (SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for the cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner         ☐ Defendant/Respondent
☐ Cross-Complainant

*(To be completed by clerk)*

4. ☑ Dismissal entered as requested on *(date):*   JAN 29 2010
5. ☐ Dismissal entered on *(date):*         as to only *(name):*
6. ☐ Dismissal **not entered** as requested for the following reasons *(specify):*

7. a. ☐ Attorney or party without attorney notified on *(date):*   JAN 29 2010
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed ☐ means to return conformed copy

DAVID H. TAMASAKI, Clerk
Chief Executive

G. Duarte

Date: JAN 29 2010         Clerk, by                                , Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. July 1, 2009]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

46

CIV-110

| PLAINTIFF/PETITIONER: Erik Estavillo | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Activision Blizzard | 109CV 158058 |

## Declaration Concerning Waived Court Fees

> The court has a statutory lien for waived fees and costs on any recovery of $10,000 or more in value by settlement, compromise, arbitration award, mediation settlement, or other recovery. The court's lien must be paid before the court will dismiss the case.

1. The court waived fees and costs in this action for *(name):* Erik Estavillo

2. The person in item 1 *(check one):*
   a. [✓] is not recovering anything of value by this action.
   b. [ ] is recovering less than $10,000 in value by this action.
   c. [ ] is recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. [ ] All court fees and costs that were waived in this action have been paid to the court *(check one):* [✓] Yes   [ ] No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: January 29th, 2010

Erik Estavillo
(TYPE OR PRINT NAME OF [ ] ATTORNEY [✓] PARTY MAKING DECLARATION)

▶ _____ (SIGNATURE)

# Exhibit 8

Case Name: _____  Case #: _____

1  Your Name: _Erik Estavillo_

2  Your Address: _32.84 Cortese_

3  _Circle_

4  Your Phone Number: _408-926-7224_

5  Self-Represented

6

7                    SUPERIOR COURT OF CALIFORNIA

8                       COUNTY OF SANTA CLARA

                          CIVIL DIVISION

9

10                                      Case No.: _11UCV173701_

11  _Erik Estavillo_               PLEADING TITLE:

12        **Plaintiff ,**              _Estavillo V. Apple_

13        And

14  _Apple Inc._                     _Unlimited_

15        **Defendant**            Judge: _____

16

17

18

19

20

21

22

23

24

25

Pleading Title: _Estavillo V. Apple_      Page _1_ of _2_

49

1. In count one, the plaintiff charges Apple Inc. with "gouging" customers by charging an alarming $69.99 for their regular AT&T Iphone plan. As a customer, the plaintiff tried to keep paying this outrageous amount, but recently had to turn off his Iphone due to the price gouging by Apple's Iphone plan, and especially in this economy. There was also a plan the plaintiff tried to register for which was for the "elderly" and only cost $29.99, but AT&T denied the plaintiff this price plan due to Apple's terms; all of this despite the plaintiff's dad being registered under the Iphone plan as well. The plaintiff's dad, a Vietnam vet, poet, and most importantly, a senior citizen was denied the cheaper price plan. Despite these injustices, Apple and AT&T plan to start charging data overcharges.

2. The second count is against Apple's gaming applications (apps). Apple's gaming apps cost up to an alarming $9.99, while remaining graphically and story-telling inferior to other games you can find on the PlayStation Network, Xbox Live, or Nintendo channel, all for the same price. Apple also does not inform or warn a customer when they update a gaming application that it might not work anymore if the customer does not pay for the full version of the game after the update is completed; hence the customer loses the chance to ever play the gaming app again.

3. <u>Prayer for relief:</u> The plaintiff asks that the state court injunction Apple, which is located in Cupertino, CA, from anymore price gouging and fix their Iphone price plan at an affordable rate of $29.99-$49.99 like all other cell phone companies do, such as T-Mobile, Sprint, Verizon, and MetroPC do. Also, the plaintiff seeks that Apple make available all their games free of charge since they are graphically inferior and that they also warn customers before updating gaming applications that they may have to price for the full version after the update, otherwise the gamer may never be able to play the game again; which Apple does not warn the customers as of yet. The Plaintiff also seeks $100,000,000 dollars in punitive damages. Also in emotional damages, which the plaintiff has evidence of from his doctors. The plaintiff suffers from Major Depression, Obsessive-Compulsive Disorder, Panic Disorder, Agoraphobia, and Crohn's Disease. Half of the money will be given to a charity of the judge's choice and the other half will be used by the plaintiff to help give to the poor and other non-profit organizations.

*Erik Estavillo*      *Erik Estavillo*      *6/4/2010*

# Exhibit 9

**CIV-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Erik Estavillo Pro Se
3284 Cortese Circle
San Jose, CA
95127

TELEPHONE NO.: 408-926-7224   FAX NO. (Optional):
E-MAIL ADDRESS (Optional): uy1uy1uy@hotmail.com
ATTORNEY FOR (Name): Erik Estavillo Pro Se

FILED

2010 JUN 23  AM 11: 55

S. HANZAVER

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Santa Clara
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS:
CITY AND ZIP CODE: 95113
BRANCH NAME: Downtown Superior Court

PLAINTIFF/PETITIONER: Erik Estavillo

DEFENDANT/RESPONDENT: Apple Inc.

| REQUEST FOR DISMISSAL | CASE NUMBER: |
|---|---|
| ☐ Personal Injury, Property Damage, or Wrongful Death | |
| ☐ Motor Vehicle   ☐ Other | |
| ☐ Family Law   ☐ Eminent Domain | 1-10-CV-173701 |
| ☑ Other (specify): Unfair Business Practice | |

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice   (2) ☑ Without prejudice
   b. (1) ☑ Complaint   (2) ☐ Petition
   (3) ☐ Cross-complaint filed by (name):   on (date):
   (4) ☐ Cross-complaint filed by (name):   on (date):
   (5) ☐ Entire action of all parties and all causes of action
   (6) ☐ Other (specify):*

2. (Complete in all cases except family law cases.)
   ☑ Court fees and costs were waived for a party in this case. (This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed).

Date: 06/23/2010

Erik Estavillo   ▶ *Erik Estavillo* (SIGNATURE)
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☑ PARTY WITHOUT ATTORNEY)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
☑ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross–Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
   Date:

   ▶ _____ (SIGNATURE)
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross–Complainant

(To be completed by clerk)

4. ☑ Dismissal entered as requested on (date): JUN 2 3 2010
5. ☐ Dismissal entered on (date):   as to only (name):
6. ☐ Dismissal **not entered** as requested for the following reasons (specify):

7. a. ☑ Attorney or party without attorney notified on (date):   JUN 2 3 2010
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
       ☐ a copy to be conformed   ☐ means to return conformed copy

Date: JUN 2 3 2010   Clerk, by _____, Deputy

S. HANZAVER

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. July 1, 2009]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CIV-110

| PLAINTIFF/PETITIONER: Erik Estavillo | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Apple Inc. | 1-10-CV-173701 |

## Declaration Concerning Waived Court Fees

The court has a statutory lien for waived fees and costs on any recovery of $10,000 or more in value by settlement, compromise, arbitration award, mediation settlement, or other recovery. The court's lien must be paid before the court will dismiss the case.

1. The court waived fees and costs in this action for *(name):*

2. The person in item 1 *(check one):*
   a. ☑ is not recovering anything of value by this action.
   b. ☐ is recovering less than $10,000 in value by this action.
   c. ☐ is recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☑ All court fees and costs that were waived in this action have been paid to the court *(check one):* ☑ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: 06/23/2010

Erik Estavillo
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☑ PARTY MAKING DECLARATION)

► _Erik Estavillo_ (SIGNATURE)

**REQUEST FOR DISMISSAL**

# Exhibit 10

Erik Estavillo
3284 Cortese Circle
San Jose, CA. 95127
(408) 338-5731



E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

*FILED*

FEB 25 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Erik Estavillo ) | Complaint |
| Plaintiff, ) | |
| ) | Date: Feb. 2nd, 2014 |
| VS. ) | |
| ) | Demands Jury Trial |
| Insomniac Games Inc., ) | |
| Sony Computer Entertainment of America, ) | |
| Microsoft Corp., Nintendo of America, and ) | CV 14-00839 |
| GameStop Inc. ) | |
| Defendants, ) | HRL |
| _____ ) | |

#5
$100

1. **Jurisdiction:** The counts and charges in this complaint involve the U.S. Constitution and other Federal statutes and laws, or treaties (28 U.S.C. § 1331).

2. **Venue:** The venue of the Northern District Federal Court of California is the appropriate venue because the defendant suffers from a number of debilitating diseases which include Crohn's Disease, Major Depression, Obsessive-Compulsive Disorder, Panic Disorder, and Minor Agoraphobia, stemming from Panic Disorder. The plaintiff cannot travel far often, due to his illnesses, and therefore must rely on the local court for help on these case issues.

3. **Intradistrict Assignment:** This lawsuit should be assigned to the San Jose Division of the court because it was in San Jose in which the violations to the disabled plaintiff occurred.



55

1. This first count is against Insomniac Games Inc., charging them with wrong doing as they are closing all servers for all Resistance games, despite Resistance 3 having come out in late 2011 and early 2012. The game is still very relevant with a healthy amount of gamers still playing online; who will now be out of money and "entitled enjoyment" since all the Resistance games will now essentially become void; as where no one can play online anymore. All of these players have already surpassed the "Campaign Mode" or in laymen terms, single player mode. And as it is stated on the game retail boxes for Resistance 1-3, it CLEARLY SAYS ON THE BACK OF THE RETAIL BOXES THAT "ONLINE PLAY AND MULTIPLAYER" WILL/WOULD BE AVAILABLE (WITHOUT AN END DATE POSTED ON THE BOX), AND WAS IMPLIED AS AN ONGOING FEATURE THAT WOULD NOT END. You can clearly understand this if you were to read any of the game retail boxes when you purchase any one of them. They essentially lied to the public on the retail boxes for these games, promoting a feature they are now ceasing; despite being able to obviously afford it given that PlayStation Plus Memberships have greatly increased, providing apt revenue for them to keep up all servers while maintaining a substantial profit.

2. The second count is against Sony Computer Entertainment of America, charging them with wrong doing in the sense that they are the publishers of the Resistance game series and are also the owners. They are highly supportive of the server closures; despite not even in the least printing on the game retail packages that "Servers can/may/are due to close without notice," which they currently do not as of now. Instead, they state it in the EULA, WHICH IS NOT PRINTED ON THE RETAIL BOX. And for the record, very, very few players ever read the EULA of any game they play online.

3. The third count is against SCEA'S PlayStation 4 console, charging them with wrong doing regarding overcharging for their PS4 video gaming console. They are clearly violating the "Cornering the Market" rules within finance with their high price of $500 for purchase of their gaming console, despite NOT COMING WITH A CAMERA OR QUALITY HEADPHONE SET.

4. The fourth count is against the Microsoft Corporation, charging them with wrong doing in the sense that they are overcharging for their new Xbox One gaming console. They are clearly violating the "Cornering the Market" rules within finance with their high price of $500 for purchase of their gaming console, despite NOT HAVING ANY KINECT 2.0 GAMES AVAILABLE AT LAUNCH. THOUGH THEY CHARGE YOU FOR THE CAMERA THAT COMES WITH THE SYSTEM.

5. The fifth count is against Nintendo of America, charging them with false advertising, since they heavily advertised the Nintendo Wii U GamePad as a second, invaluable screen to be used in most games; when in fact it isn't. Most games use the second screen just as an alternative to playing on the television set. However, Nintendo marketed the Wii U GamePad as having many alternative

56

uses DURING GAMEPLAY AS A SECOND SCREEN, OFFERING
DIFFERENT FEATURES TO ENHANCE GAMEPLAY. So far, the Nintendo
Wii U GamePad has only taken advantage of its second screen fully in 5% of all
Nintendo Wii U video games; primarily Batman: Arkham City and Splinter Cell:
Blacklist.

6. The sixth and last count is against GameStop Inc. and their clear robbery of
fellow Developers and Publishers who cannot profit from GameStop's re-buying
and re-selling of used games. Developers and Publishers alike can't do anything
to recoup money from GameStop, since GameStop is a monopoly with no kind of
competition coming from another PURE GAMING RETAIL STORE (BRICK
AND MORTAR); hence "Lording it over fellow developers and publishers and
'holding them hostage' to their financial practices and whims." Therefore, an
injunction should occur against GameStop from buying and re-selling used games
and the injunction should be put forth immediately until GameStop finds a way to
administer profits to Developers and Publishers of these used games. Also,
another immediate injunction against GameStop should be imposed; stopping
GameStop from requiring $15 to join their rewards program. Instead, the slate
should be wiped clean and any current/new memberships should remain free until
GameStop can administer profits to fellow Developers and Publishers as is rightly
deserved. This injunction should include the GameInformer Magazine from being
sold in these stores at the price of $15 along with membership; until resolutions
can be fully found and realized in a court room of law by the Honorable Judge
presiding over this case.

7. Furthermore. subpoenas will be issued to the follower individuals: Ceo Ted Price
of Insomniac Games and President Jack Tretton of SCEA to answer for the
Resistance server closures. Don Mattrick of Microsoft/Zynga and Steve Ballmer
of Microsoft will be subpoenaed to answer for the high cost of the Xbox One and
"Cornering the Market" rules which they have obviously violated. To President
Reggie Fils-Aime of Nintendo for falsely advertising the Wii U GamePad as a
device that greatly enhances all gameplay on the Nintendo Wii U. Lastly,
President Tony Bartel and CEO J. Paul Raines of GameStop will be subpoenaed
in order for them to testify on their business practices (having an unfair monopoly
within the gaming market and not sharing profits from used games with fellow
Developers and Publishers).

8. A copy of this complaint will be filed in San Jose State Court for those companies
which are located in California. Including, Insomniac Games in Burbank, CA and
Sony Computer Entertainment of America in Foster City, CA. A federal
complaint will be filed in San Jose Federal Court for those companies
domestically abroad. Such as GameStop Inc. in Grapevine, TX, and Microsoft
Corp. and Nintendo of America in Redmond, Washington.

9. **_Prayer for relief:_** All I wish for as the plaintiff is that injunctions be immediately
enforced against these companies. The first injunction will be to keep Insomniac

Games Inc. and SCEA from closing Resistance servers until the very, very, Honorable Judge hears this case in full. Also, two immediate injunctions against the PS4 and Xbox One gaming consoles should be enforced which will bind and keep each console from being sold in store until they are lowered in price by at least $100; or as a concession: freely add a second controller to each sale. This action would IMMEDIATELY BENEFIT EVERY GAMER WHO HAS ALREAD PAID TOO MUCH FOR EITHER GAMING SYSTEM. Also, one final injunction against GameStop Inc. should be imposed which will keep them from selling any used games, selling any new memberships, or selling any new GameInformer Magazines, until all court proceedings have taken forth against them and have been resolved in full by the very, very, Honorable Judge who will be presiding over this case. Lastly, the plaintiff wishes to ask the court that any monetary judgments awarded to the plaintiff, be instead given to a charity of the Honorable Judge's Choice.

58

# Exhibit 11

1  Erik Estavillo
   3284 Cortese Circle
2  San Jose CA 95127
   (408) 338-5731
3
   Plaintiff – Pro Se
4

FILED

APR 10 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5

6          **UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**
7                  **SAN JOSE DIVISION**

                                    )   Case Number: 14-CV-0839 HRL
8  ERIK ESTAVILLO,                  )
                                    )   **PLAINTIFF'S NOTICE OF VOLUNTARY**
9          Plaintiff,               )   **DISMISSAL, WITHOUT PREJUDICE**
                                    )   [FRCP § 41(a)(1)(A)(i)]
10         vs.                       )
                                    )
11 INSOMNIAC GAMES INC., ET AL.,    )
                                    )
12         Defendants.              )
                                    )

13

14     **TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

15

16     **NOTICE IS HEREBY GIVEN** that pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules

17 of Civil Procedure, plaintiffs voluntarily dismiss the above-captioned case, without prejudice, as

18 to all Defendants.

19

20                         Respectfully Submitted,

21

22     Date: March 5, 2014

23                         Pllaintiff, Pro Se

24

25

26

27

NOTICE OF VOLUNTARY DISMISSAL                    CASE NO.: 14-cv-0839 HRl
WITHOUT PREJUDICE

60

Dear Clerk and/or Judge,

I, Erik Estavillo, hereby, have to voluntarily drop case 14-CV-0839 HRL. Reason being that my health is declining with each passing day the case is not heard. My panic disorder and Crohn's Disease are worsening; as can be seen in the attached Emergency Room Document. Thank you for your understanding.

Dated: April 10th 2014                                              Erik Estavillo

# Exhibit 12

Erik Estavillo
3284 Cortese Circle
San Jose, CA. 95127
(408) 338-5731

THE SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

SAN JOSE STATE COURT

| | | |
|---|---|---|
| Erik Estavillo | ) | Complaint |
| Plaintiff, | ) | |
| | ) | Date: Feb. 2nd, 2014 |
| VS. | ) | |
| | ) | Demands Jury Trial |
| Insomniac Games Inc., | ) | |
| Sony Computer Entertainment of America, | ) | 114CV261274 |
| Microsoft Corp., Nintendo of America, and | ) | |
| GameStop Inc. | ) | |
| Defendants, | ) | |
| | ) | |

1. **Jurisdiction:** The counts and charges in this complaint involve California State Law and "Cornering the Market" finance law.

2. **Venue:** The venue of the Superior Court of California, County of Santa Clara is the appropriate venue because the defendant suffers from a number of debilitating diseases which include Crohn's Disease, Major Depression, Obsessive-Compulsive Disorder, Panic Disorder, and Minor Agoraphobia, stemming from Panic Disorder. The plaintiff cannot travel far often, due to his illnesses, and therefore must rely on the local court for help on these case issues.

3. **Intradistrict Assignment:** This lawsuit should be assigned to the San Jose Division of the Superior Court of California because it was in San Jose in which the violations to the disabled plaintiff occurred.

63

1. This first count is against Insomniac Games Inc., charging them with wrong doing as they are closing all servers for all Resistance games, despite Resistance 3 having come out in late 2011 and early 2012. The game is still very relevant with a healthy amount of gamers still playing online; who will now be out of money and "entitled enjoyment" since all the Resistance games will now essentially become void; as where no one can play online anymore. All of these players have already surpassed the "Campaign Mode" or in laymen terms, single player mode. And as it is stated on the game retail boxes for Resistance 1-3, it CLEARLY SAYS ON THE BACK OF THE RETAIL BOXES THAT "ONLINE PLAY AND MULTIPLAYER" WILL/WOULD BE AVAILABLE (WITHOUT AN END DATE POSTED ON THE BOX), AND WAS IMPLIED AS AN ONGOING FEATURE THAT WOULD NOT END. You can clearly understand this if you were to read any of the game retail boxes when you purchase any one of them. They essentially lied to the public on the retail boxes for these games, promoting a feature they are now ceasing; despite being able to obviously afford it given that PlayStation Plus Memberships have greatly increased, providing apt revenue for them to keep up all servers while maintaining a substantial profit.

2. The second count is against Sony Computer Entertainment of America, charging them with wrong doing in the sense that they are the publishers of the Resistance game series and are also the owners. They are highly supportive of the server closures; despite not even in the least printing on the game retail packages that "Servers can/may/are due to close without notice," which they currently do not as of now. Instead, they state it in the EULA, WHICH IS NOT PRINTED ON THE RETAIL BOX. And for the record, very, very few players ever read the EULA of any game they play online.

3. The third count is against SCEA'S PlayStation 4 console, charging them with wrong doing regarding overcharging for their PS4 video gaming console. They are clearly violating the "Cornering the Market" rules within finance with their high price of $500 for purchase of their gaming console, despite NOT COMING WITH A CAMERA OR QUALITY HEADPHONE SET.

4. The fourth count is against the Microsoft Corporation, charging them with wrong doing in the sense that they are overcharging for their new Xbox One gaming console. They are clearly violating the "Cornering the Market" rules within finance with their high price of $500 for purchase of their gaming console, despite NOT HAVING ANY KINECT 2.0 GAMES AVAILABLE AT LAUNCH. THOUGH THEY CHARGE YOU FOR THE CAMERA THAT COMES WITH THE SYSTEM.

5. The fifth count is against Nintendo of America, charging them with false advertising, since they heavily advertised the Nintendo Wii U GamePad as a second, invaluable screen to be used in most games; when in fact it isn't. Most games use the second screen just as an alternative to playing on the television set. However, Nintendo marketed the Wii U GamePad as having many alternative

Erik ⟋⟋⟋⟋ 64 ⟋⟋⟋⟋

uses DURING GAMEPLAY AS A SECOND SCREEN, OFFERING
DIFFERENT FEATURES TO ENHANCE GAMEPLAY. So far, the Nintendo
Wii U GamePad has only taken advantage of its second screen fully in 5% of all
Nintendo Wii U video games; primarily Batman: Arkham City and Splinter Cell:
Blacklist.

6.  The sixth and last count is against GameStop Inc. and their clear robbery of
    fellow Developers and Publishers who cannot profit from GameStop's re-buying
    and re-selling of used games. Developers and Publishers alike can't do anything
    to recoup money from GameStop, since GameStop is a monopoly with no kind of
    competition coming from another PURE GAMING RETAIL STORE (BRICK
    AND MORTAR); hence "Lording it over fellow developers and publishers and
    'holding them hostage' to their financial practices and whims." Therefore, an
    injunction should occur against GameStop from buying and re-selling used games
    and the injunction should be put forth immediately until GameStop finds a way to
    administer profits to Developers and Publishers of these used games. Also,
    another immediate injunction against GameStop should be imposed; stopping
    GameStop from requiring $15 to join their rewards program. Instead, the slate
    should be wiped clean and any current/new memberships should remain free until
    GameStop can administer profits to fellow Developers and Publishers as is rightly
    deserved. This injunction should include the GameInformer Magazine from being
    sold in these stores at the price of $15 along with membership; until resolutions
    can be fully found and realized in a court room of law by the Honorable Judge
    presiding over this case.

7.  Furthermore, subpoenas will be issued to the follower individuals: Ceo Ted Price
    of Insomniac Games and President Jack Tretton of SCEA to answer for the
    Resistance server closures. Don Mattrick of Microsoft/Zynga and Steve Ballmer
    of Microsoft will be subpoenaed to answer for the high cost of the Xbox One and
    "Cornering the Market" rules which they have obviously violated. To President
    Reggie Fils-Aime of Nintendo for falsely advertising the Wii U GamePad as a
    device that greatly enhances all gameplay on the Nintendo Wii U. Lastly,
    President Tony Bartel and CEO J. Paul Raines of GameStop will be subpoenaed
    in order for them to testify on their business practices (having an unfair monopoly
    within the gaming market and not sharing profits from used games with fellow
    Developers and Publishers).

8.  A copy of this complaint will be filed in San Jose State Court for those companies
    which are located in California. Including, Insomniac Games in Burbank, CA and
    Sony Computer Entertainment of America in Foster City, CA. A federal
    complaint will be filed in San Jose Federal Court for those companies
    domestically abroad. Such as GameStop Inc. in Grapevine, TX, and Microsoft
    Corp. and Nintendo of America in Redmond, Washington.

9.  *__Prayer for relief:__* All I wish for as the plaintiff is that injunctions be immediately
    enforced against these companies. The first injunction will be to keep Insomniac

65

Games Inc. and SCEA from closing Resistance servers until the very, very, Honorable Judge hears this case in full. Also, two immediate injunctions against the PS4 and Xbox One gaming consoles should be enforced which will bind and keep each console from being sold in store until they are lowered in price by at least $100; or as a concession; freely add a second controller to each sale. This action would IMMEDIATELY BENEFIT EVERY GAMER WHO HAS ALREAD PAID TOO MUCH FOR EITHER GAMING SYSTEM. Also, one final injunction against GameStop Inc. should be imposed which will keep them from selling any used games, selling any new memberships, or selling any new GameInformer Magazines, until all court proceedings have taken forth against them and have been resolved in full by the very, very, Honorable Judge who will be presiding over this case. Lastly, the plaintiff wishes to ask the court that any monetary judgments awarded to the plaintiff, be instead given to a charity of the Honorable Judge's Choice.

And $30,000 in punitive damage to go to Judge's choice of charity.

66

# Exhibit 13

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Erik Estavillo<br>3284 Cort ie Circle, San Jose, CA 95127<br>TELEPHONE NO.: 1-408-338-5731    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* uy1uy1uy27@gmail.com<br>ATTORNEY FOR *(Name):* Pro Se | FILED<br>APR 10 2014<br>UCS |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
 STREET ADDRESS: Civil Division
 MAILING ADDRESS: 191 N. First Street
 CITY AND ZIP CODE: San Jose, CA 95113
 BRANCH NAME:

PLAINTIFF/PETITIONER: Erik Estavillo

DEFENDANT/RESPONDENT: Insomniac, SCEA, Microsoft, Nintendo, GameStop

| REQUEST FOR DISMISSAL | CASE NUMBER: 114CV261274 |
|---|---|

**A conformed copy will not be returned by the clerk unless a method of return is provided with the document.**

**This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)**

1. TO THE CLERK: Please **dismiss** this action as follows:
 a. (1) ☐ With prejudice  (2) ☑ Without prejudice
 b. (1) ☑ Complaint  (2) ☐ Petition
  (3) ☐ Cross-complaint filed by *(name):*                  on *(date):*
  (4) ☐ Cross-complaint filed by *(name):*                  on *(date):*
  (5) ☐ Entire action of all parties and all causes of action
  (6) ☐ Other *(specify):**

2. *(Complete in all cases except family law cases.)*
 The court ☑ did ☐ did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: April 10th, 2014

..........Erik Estavillo..........         ▶ Erik Estavillo
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☑ PARTY WITHOUT ATTORNEY)                (SIGNATURE)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
☑ Plaintiff/Petitioner        ☐ Defendant/Respondent
☐ Cross-Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
 Date:

                           ▶
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                (SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner        ☐ Defendant/Respondent
☐ Cross-Complainant

*(To be completed by clerk)*
4. ☑ Dismissal entered as requested on *(date):* APR 1 0 2014

5. ☐ Dismissal entered on *(date):*            as to only *(name):*

6. ☐ Dismissal **not entered** as requested for the following reasons *(specify):*

7. a. ☑ Attorney or party without attorney notified on *(date):* APR 1 0 2014
 b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
   ☐ a copy to be conformed  ☐ means to return conformed copy

Date: APR 1 0 2014        Clerk, by _____ , Deputy

D. Werde

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. Jan. 1, 2013] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.;<br>Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390<br>www.courts.ca.gov |
|---|---|---|

**CIV-110**

| PLAINTIFF/PETITIONER: Erik Estavillo | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Insomniac, SCEA, Microsoft, Nintendo, GameStop | 114CV261274 |

---

### COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

---

### Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):* Erik Estavillo

2. The person named in item 1 is *(check one below):*
   a. [✓] not recovering anything of value by this action.
   b. [ ] recovering less than $10,000 in value by this action.
   c. [ ] recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. [ ] All court fees and court costs that were waived in this action have been paid to the court *(check one):* [ ] Yes [ ] No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: April 10th, 2014

Erik Estavillo

(TYPE OR PRINT NAME OF [ ] ATTORNEY [✓] PARTY MAKING DECLARATION)

▶ *Erik Estavillo*
(SIGNATURE)

---

# Exhibit 14

Erik Estavillo
3284 Cortese Circle
San Jose, CA. 95127
(408) 593-1226
Webbbnet@aol.com



**FILED**

MAR 26 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

|  |  |
|---|---|
| Erik Estavillo, | Case No.: 19-cv-01025-SVK |
| Plaintiff, | |
| v. | **COMPLAINT (Amended)** |
| | **JURY TRIAL DEMANDED** |
| Behaviour Interactive (creators of Dead by Daylight), Valve Corporation (of Steam Software) | Judge: Honorable Susan van Kleuen<br>Date Action filed: Feb. 25, 2019 |
| Defendants. | |

## 1. JURISDICTION:

This court has jurisdiction over this complaint because it arises under the laws of the United States. More specifically, it arises under and involves the Americans With Disabilities Act (ADA), which is a well known federal law and with which the plaintiff officially suffers from a number of debilitating disabilities, both mental and physical, including but not limited to Major Depression, Obsessive Compulsive Disorder (OCD), Panic Disorder, and Crohn's Disease; which has resulted in the plaintiff receiving disability payments from the Social Security Administration. Furthermore, both defendants reside outside of state lines, implementing Diversity requirements. Valve Corporation is located in Bellevue, Washington State. As where

1   Behaviour Interactive is located in Montreal, Quebec, Canada, but maintains a significant

2   domestic 'home' presence as it conducts much of its business here in Northern California and on

3   the Western Coast of the United States by ardently and functionally maintaining its video games

4
5   in many U.S. video gaming stores as well as on the Steam store, where the violations against the

6   plaintiff occurred. There is already federal precedent allowing for a U.S. Federal Court to

7   summons a Canadian company as ruled by The United States Court of Appeals for the First

8   Circuit on Nov. 12, 2014; and "has confirmed that courts can take 'long arm' jurisdiction over a

9   Canadian resident corporation, even when the company has no physical presence in the

10
11  American jurisdiction, and the only contact between the parties was by electronic and telephone

12  communications across the border," via *C.W. Downer & Co. v. Bioriginal Food & Science Corp. No 14-*

13  *1327.* (documented evidence for all cases listed here on out have been provided along with this

14  amended complaint.) Furthermore, the Diversity requisite is also met because the monetary

15  amount in question is more than $75,000.

16

17  **2. VENUE:** Venue is appropriate in this Court because both defendants reside outside this

18  district; however, the plaintiff resides in Northern California and finds it much too difficult, both

19  mentally and physically, to travel more than one state away as he suffers from both mental and

20
21  physical disabilities, as stated previously. He has never traveled more than one state away his

22  whole life and even finds that to be very difficult. Also, a substantial amount of the acts and

23  omissions giving rise to this lawsuit occurred in this District. Furthermore, California law

24  requires stores (digital or otherwise such as Steam) that do not accept return or refunds must

25  clearly display their policy as explicitly as possible, as stated in California Civil Code section

26
27  1723. And since Steam does not offer a digital return or refund for banned video gamers, no

28  matter the reasoning/justification of the ban or whether it was valid to begin with as well as them

1  giving no prudence about the time frame or monetary amount in question when a customer

2  requests a refund after being banned by a video game developer selling merchandise via their

3  Steam platform; they are therefore violating California Civil Code section 1723 by not

4
5  explicating stating this in front of their digital store as required by California Civil Code section

6  1723.

7

8  ### 3.  INTRADISTRICT ASSIGNMENT:

9      This lawsuit should be assigned to the San Jose Division of this Court because a substantial

10
11  part of events or omissions which give rise to this lawsuit occurred in Santa Clara County.

12

13  ### 4.  STATEMENT OF FACTS:

14  The plaintiff is an avid video game player, and since suffering from Depression, OCD, Panic

15  Disorder, and Crohn's Disease; heavily relies on video games for the little stability he can

16
17  achieve in this life. Having these debilitating diseases means he has no friends (as phone records

18  can prove) and rarely socializes outside of the house. Therefore, he heavily relies on video games

19  for communication with other players and other socialization needs that he can only meet via this

20  video gaming medium. He also relies on video games to occupy his time and distract him from

21  said disabilities. However, video game developer Behaviour Interactive deemed it necessary to

22
23  permanently ban him 64 days ago as of the writing of this amended complaint, from their video

24  game, Dead by Daylight. He had previously been "warned" and temporarily banned for very

25  vague reasons such as "harassment", but was never given proof of said events via pictured

26  documentation or video evidence, despite requesting it multiple times. Plaintiff, however, has

27  video evidence via Youtube and Twitch, of other video game customers/streamers that

28

1   Behaviour Interactive has banned discriminately and often times arbitrarily, based on how the

2   moderators feel towards a gamer, and not so much about the facts in question. The plaintiff

3   played Dead by Daylight every night for months on end, and in a very certain way because of his

4
5   Obsessive Compulsive Disorder and cannot perceivably play any other way since he plays

6   accordingly to what his mental illness will allow. However, moderators for the game, more

7   specifically a moderator that goes by the name of Giddawid, stated that he did not like how the

8   plaintiff was playing the game as the 'Killer' Freddy Krueger, and after the plaintiff was verbally

9   attacked by other 'Survivor' players in a post-game chat lobby, he defended himself against their
10
11  attacks. But moderators for the video game Dead by Daylight viewed this as "harassment" on his

12  part, without providing him requested pictured/video documentation of other-like said events,

13  and eventually banned him permanently without any monetary recourse such as a return or

14  refund, despite the plaintiff having spent nearly $500 on their video game via microtransactions

15  on the Steam store. Furthermore, the plaintiff owns 33 video games on the Steam store but is
16
17  only banned from 1 video game, that being Dead by Daylight of Behaviour Interactive. This fact

18  shows that plaintiff followed rules in all other games he played via Steam, did not have a history

19  or the habit of being banned in any different video games, and that Behaviour Interactive and

20  Steam are illegally complicit in allowing many players to be banned, such as he was, via this 1

21  particular video game. This results in thousands of wrongly banned players having to repurchase
22
23  the game so that Steam and Behaviour Interactive can illegally profit monetarily from hundreds

24  of arbitrary bans against players who have to repurchase a 2nd, and often 3rd copy of the game if

25  they wish to continue playing.

26

27

28

1    **5. CLAIMS**

2    **Claim 1:** Steam is a complicit violator against California Civil Code section 1723 by not

3    explicating stating that no returns or refunds are available in front of their digital store for banned

4    video gamers (who may be mentally disabled such as the plaintiff and/or are minors and not as

5    keen into understanding such EULA legalese without caregiver/parental help). To make matters

6    worse, some players were undoubtedly undeserving of their arbitrary, biased bans in the first

7    place. These customers are then without monetary recourse such as refund/return despite having

8    spent a substantial amount of money on video games in the Steam marketplace, such as the

9    plaintiff had.

10   **Claim 2:** Steam and Behaviour Interactive are violating the Americans with Disabilities Act;

11   Title III – Public Accommodations and Commercial Facilities *42 U.S.C. §§ 12181–12189* and Title

12   IV - by not updating their websites/EULAs' to meet the needs of Americans with Mental

13   Disabilities such as the plaintiff's need to have it explicitly disclosed on the storefront as well as

14   in the beginning of both Steam and Behaviour Interactives' EULAs' stating important facts

15   about refunds, returns, and other important information that people with disabilities/and or

16   minors under the age of 18 need explicitly explained to them, such as which rights they are

17   giving up by agreeing to an EULA. This is made further worse by their EULAs' not initially ever

18   recommending for these disadvantaged groups to have a caregiver/parent overlook or read these

19   EULAs' with them or for them. There is a U.S. Federal Court precedent for this as previously

20   ruled by U.S. District Judge Robert N. Scola, in a nonjury trial in the District Court for the

21   Southern District of Florida, where he states for what is believed to be the first time, a court

22   ruling that failure to make a website (physically and mentally) accessible to people with

23   disabilities violated the Americans with Disabilities Act., as where it was found, "(in) a 13-page

finding (that) grocer Winn-Dixie violated Title III of the Americans with Disabilities Act by having a website that was not useable by plaintiff Juan Carlos Gil to download coupons, order prescriptions and find store locations. Mr. Gil is visually impaired and uses screen-reader software to access websites. Judge Scola awarded Mr. Gil his attorneys' fees and costs and required Winn-Dixie to update its website. In its verdict, Judge Scola wrote, 'Winn-Dixie has violated the American Disabilities Act because the inaccessibility of its website has denied Gil the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations that Winn-Dixie offers to its sighted customers." This ruling should also further apply to Americans with Mental Disabilities such as the plaintiff in this case, whom needs explicit explanations as to refund policies and other vital information on digital video gaming storefronts such as Steam that may illegally take away certain rights or monies that the plaintiff and/or other disabled video gamers may instead need for everyday life necessities. Video gamers with mental disabilities need certain imperative rules and regulations explicitly explained to them right away, shown to them right away, and not to be hidden at the bottom of an EULA they may have trouble deciphering in the first place, such as the plaintiff did due to his mental disabilities; *Gil v. Winn Dixie Stores, Inc., No. 1:2016cv23020 - Document 63 (S.D. Fla. 2017).*

## 6. REQUEST FOR RELIEF:

Plaintiff respectfully prays for a judgment against Defendants for:

i. Injunctive and equitable relief as the Court deems appropriate including:

    a. Requiring Steam to comply with California Civil Code section 1723 by stating explicitly on the front-page of their Steam store that there are no refunds/returns for players suffering from mental disabilities who are permanently banned from a video game.

b. Requiring both Defendants to update their EULAs' to help consumers with mental disabilities/and minors better find important information regarding refunds, returns, and which rights they are giving up. These should be stated at the top of the EULAs' instead of at the bottom. We're also asking that their EULAs' initially advise that a caretaker or parent read the EULA along with them or for them if they are mentally disabled or are a minor under 18 years of age.

c. Compelling the Defendants to reinstate any mentally disabled banned players that were not initially given pictured or video evidence along with the reasoning for their permanent bans; to serve as aided proof for the reasoning for their initial banning.

ii. Compensatory damages to be paid by all Defendants, according to proof at trial, along with;

    iii. Punitive damages in the amount of $10 million dollars against Steam and $5 million dollars against Behaviour Interactive

    iv. And any additional punitive damages the court/jury may deem appropriate.

Plaintiff Signature
Demand for Jury Trial

# Exhibit 15

 Positive
As of: September 10, 2019 3:07 PM Z

# *Estavillo v. Behaviour Interactive*

United States District Court for the Northern District of California

May 30, 2019, Decided; May 30, 2019, Filed

Case No. 19-cv-01025-SVK

**Reporter**

2019 U.S. Dist. LEXIS 108146 *; 2019 WL 2642468

ERIK ESTAVILLO, Plaintiff, v. BEHAVIOUR INTERACTIVE, et al., Defendants.

**Subsequent History:** Adopted by, Dismissed by *Estavillo v. Behaviour Interactive, 2019 U.S. Dist. LEXIS 108144 (N.D. Cal., June 27, 2019)*

## Core Terms

amended complaint, allegations, subject matter jurisdiction, compensatory damages, punitive damages, amount in controversy, diversity jurisdiction, federal question, screening, website, fails, award of punitive damages, pro se, RECOMMENDS, damages, courts, amend, ratio, federal law, jurisdictional, Disabilities, Games

**Counsel:** [*1] Erik Estavillo, Plaintiff, Pro se, San Jose, CA.

**Judges:** SUSAN VAN KEULEN, United States Magistrate Judge.

**Opinion by:** SUSAN VAN KEULEN

## Opinion

**REPORT AND RECOMMENDATION TO DIMISS PLAINTIFF'S COMPLAINT PURSUANT TO *28 U.S.C. § 1915***

Re: Dkt. Nos. 7, 8

Before the Court is pro se plaintiff Erik Estavillo's amended complaint ("Amended Complaint"). ECF. 8. Plaintiff filed his original complaint ("Complaint") (ECF 1) and a motion for leave to proceed in forma pauperis ("IFP") (ECF 2) on February 25, 2019. Plaintiff's original Complaint sets forth various grievances and changes

that Plaintiff demanded Defendants Epic Games, Behaviour Interactive and Starbreeze Studios make to their video games: Fortnite and Dead by Daylight. *See* ECF 1. Pursuant to *28 U.S.C. § 1915*, the Court denied Plaintiff's IFP application without prejudice and conducted an initial screening review of Plaintiff's Complaint. ECF 5. The Court found that the Complaint failed to establish federal subject matter jurisdiction or state a claim upon which relief may be granted. *Id.* at 2-4. As a result, the Court instructed Plaintiff to submit an amended IFP application and an amended complaint. *Id.* at 4.

In response to the Court's order, Plaintiff filed an amended IFP application (ECF 7) and his Amended Complaint **[*2]** (ECF 8). Plaintiff's Amended Complaint abandons his claims against Defendants Epic Games and Starbreeze Studios and instead seeks relief against Defendants Behavior Interactive and Value Corporation under California law and the *Americans with Disabilities Act ("ADA")*. *See* ECF 8. On April 11, 2019, the Court issued its second screening order under *28 U.S.C. § 1915*, granting Plaintiff's amended IFP application but concluding that Plaintiff's Amended Complaint fails to establish a basis for federal subject matter jurisdiction. ECF 11 at 2-8. The Court ordered Plaintiff to amend his Amended Complaint by May 13, 2019. *Id.* at 8. To date, Plaintiff has not filed a second amended complaint.

Plaintiff has not consented to the jurisdiction of a Magistrate Judge. Likewise, Defendant has not been served and therefore has not yet made an election regarding the jurisdiction of a Magistrate Judge. Accordingly, the Court **ORDERS** the Clerk of the Court to reassign this case to a District Judge. *See Williams v. King, 875 F.3d 500, 503-04 (9th Cir. 2017)*.

For the reasons stated below, the Court **RECOMMENDS DISMISSAL** of Plaintiff's Amended Complaint pursuant to *28 U.S.C. § 1915(e)(2)* **WITH PREJUDICE**.

Matt Ardoin

## I. BACKGROUND

On February 25, 2019, Plaintiff filed his original IFP application and Complaint. ECF 1; ECF [*3] 2. The Court denied his IFP application without prejudice based on Plaintiff's failure to state the amount that he receives from Federal or State welfare payments, Social Security or other government sources. ECF 5 at 2. The Court also conducted an initial screening review of Plaintiff's Complaint pursuant to *28 U.S.C. § 1915* and found that the Complaint failed to establish federal subject matter jurisdiction or state a claim upon which relief may be granted. *Id.* at 2-4. In particular, the Court found that Plaintiff's list of grievances and suggested changes to Defendants' video games failed to identify any federal or state law which entitles him to relief from the Court. *Id.* The Court thus instructed Plaintiff to submit an amended IFP application and an amended complaint.

Plaintiff filed his Amended IFP Application and Amended Complaint on March 26, 2019. ECF 7; ECF 8. Plaintiff's Amended Complaint differs significantly from his original Complaint. *See* ECF 8. Plaintiff no longer alleges claims against Defendants Epic Games and Starbreeze Studios. *Id.* Instead, Plaintiff's Amended Complaint seeks relief from Defendants Behavior Interactive and Value Corporation ("Defendants") based on two claims. The first claim [*4] alleges that Defendants violated *California Civil Code § 1723* by failing to state on the front page of the website for their digital-video-gaming store, Steam, that no returns or refunds are available for banned video gamers. *Id.* at 5. The second claim alleges that the Defendants violated the ADA by not updating their websites and end user license agreements "to meet the needs of Americans with Mental Disabilities," who need to have "important facts about refunds, returns, and other important information . . . explicitly explained to them." *Id.* Plaintiff requests compensatory damages and a total of $15 million in punitive damages. *Id.* at 7.

## II. PLAINTIFF'S AMENDED COMPLAINT

### A. Screening under *§ 1915(e)(2)*

District courts must screen civil actions filed in forma pauperis to ensure that the complaint states a claim, is not frivolous and does not seek monetary relief against a defendant who is immune from such relief. *28 U.S.C. § 1915(e)(2)*; *Lopez v. Smith, 203 F.3d 1122, 1126-27*

*(9th Cir. 2000)* (en banc). A "frivolous" complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 324, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)*. The Ninth Circuit has noted that *§ 1915(e)(2)(B)(ii)* parallels the language of *Federal Rule of Civil Procedure 12(b)(6)*. *Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)*. Indeed, both *Rule 12(b)(6)* and *§ 1915(e)(2)(B)* require a district court to dismiss a complaint that fails to state a claim upon which relief can be granted.

A plaintiff's "complaint must contain sufficient [*5] factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. Pursuant to a *§ 1915* review, "[d]ismissal is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him to relief." *Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012)* (citations omitted). In its review, the Court liberally construes pro se pleadings. *Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012)*.

A lack of subject matter jurisdiction may support finding that a complaint is frivolous. *See Pratt v. Sumner, 807 F.2d 817, 819 (9th Cir. 1987)*. The Court similarly has a continuing duty to determine whether it has subject matter jurisdiction. *Fed. R. Civ. Proc. 12(h)(3)*. Federal question jurisdiction under *28 U.S.C. § 1331* and diversity jurisdiction under *28 U.S.C. § 1332* are the two most common forms of federal subject matter jurisdiction. Federal question jurisdiction exists over actions "arising under the Constitution, laws, or treaties of the United States." *28 U.S.C. § 1331*. The well-pleaded complaint rule governs whether a complaint establishes federal question jurisdiction and "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)* (citation omitted). Diversity jurisdiction requires that all plaintiffs be of diverse citizenship from all defendants, [*6] and that the amount in controversy exceeds $75,000. *28 U.S.C. § 1332(a)*; *Exxon Mobil Corp. v. Allapattah Svcs., Inc., 545 U.S. 546, 553-54, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005)*.

### B. Federal Subject Matter Jurisdiction

Plaintiff's Amended Complaint fails to establish that the

Court possesses subject matter jurisdiction over this dispute. Federal courts are courts of limited jurisdiction, and as the party seeking to invoke federal court jurisdiction, Plaintiff has the burden of establishing that federal subject matter jurisdiction exists. *Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986)*. Plaintiff's Amended Complaints fails to present either a viable federal cause of action or provide allegations that satisfy diversity jurisdiction's amount in controversy requirement.

### 1. Federal Question Jurisdiction

Plaintiff's Amended Complaint fails to state a viable claim under federal law and thus fails to establish federal question jurisdiction. *See Empire Healthcare Assur., Inc. v. McVeigh, 547 U.S. 677, 689-90, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006)* (noting that a case "arises under" federal law if a "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law") (citations omitted). Plaintiff pleads one federal claim under the ADA, alleging that Defendants discriminated against individuals with mental disabilities such as Plaintiff **[*7]** by concealing important information regarding returns and refunds. ECF 8 at 5-6.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." *42 U.S.C. § 12182(a)*. Plaintiff points to a federal district court decision from Florida to support his allegations that a website may be held liable as public accommodation. ECF 8 at 5-6 (citing *Gil v. Winn Dixie Stores, Inc., 242 F. Supp. 3d 1315 (S.D. Fla. 2017))*. There, the Court denied a motion to dismiss an ADA claim against a grocery chain's website because the plaintiff "sufficiently alleged a nexus between [the grocery chain's] website and its physical stores." *Winn Dixie, 242 F. Supp. 3d at 1321*. The Court did not reach the question of whether the grocer's "website is a public accommodation in and of itself." *Id.* However, the Ninth Circuit—the controlling law in this district—has recognized that a website whose "services are not connected to any 'actual, physical place[]' . . . is not subject to the ADA." *Earll v. eBay, Inc., 599 F. App'x 695, 696 (9th Cir. 2015)* (quoting *Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir.2000))*. According to Plaintiff's allegations, Steam is a "digital store." ECF 8 at 5. As a result, the Amended Complaint lacks allegations that **[*8]** show Steam has a connection to an actual, physical place. Without that connection, Plaintiff's "ADA claim fails as a matter of law." *Earll, 599 F. App'x at 696*. Plaintiff thus fails to plead a viable claim under federal law, and the Amended Complaint does not establish federal question jurisdiction.

### 2. Diversity Jurisdiction

The Amended Complaint fails to plead sufficient facts to establish diversity jurisdiction as well. As the Court noted in its previous order, diversity jurisdiction exists where all plaintiffs are of different citizenship than all defendants and the amount in controversy exceeds $75,000. *28 U.S.C. § 1332*. The Amended Complaint alleges diversity of citizenship and asserts that the amount in controversy exceeds $75,000. ECF 8 at 1-2. In particular, Plaintiff seeks compensatory damages and a total of $15 million in punitive damages. *Id.* at 7. The only basis for compensatory damages in the Amended Complaint is Plaintiff's reference to the "nearly $500" that he allegedly spent in the Stream store on Defendants' "video game via microtransactions." *Id.* at 4.

Courts determine the amount in controversy for jurisdictional purposes based on "the amount of damages or the value of the property that is the subject of the action." *Waldbewohner v. Taxation Dep't, Com. of Australia, No. C 93-1729 SBA, 1993 U.S. Dist. LEXIS 8814, 1993 WL 219279, at *1 (N.D. Cal. June 11, 1993)* **[*9]** (citing *Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 346-48, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)*. Although the Court accepts damages claims "made in good faith," the Court may dismiss a complaint based on a failure to satisfy the amount in controversy requirement where it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S. Ct. 586, 82 L. Ed. 845 (1938)*; *see also Crum v. Circus Circus Enterprises, 231 F.3d 1129, 1131 (9th Cir. 2000)*. Furthermore, "Courts must 'scrutinize [a] claim closely' where 'a claim for punitive damages makes up the bulk of the amount in controversy.'" *Cason v. California Check Cashing Stores, No. 13-CV-03388-JCS, 2013 U.S. Dist. LEXIS 147568, 2013 WL 5609329, at *3 (N.D. Cal. Oct. 11, 2013)* (citations omitted).

The Supreme Court recognizes that the *Fourteenth Amendment's due process clause* places limits on

2019 U.S. Dist. LEXIS 108146, *9

punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003)*. Based on these concerns, the Court instructed courts to consider three guideposts when evaluating punitive damages awards:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Id. at 418* (citation omitted). Although the Court declined "to impose a **[*10]** bright-line ratio which a punitive damages award cannot exceed," the Court noted "that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id. at 425*. The California Supreme Court in turn has concluded that awards exceeding a single-digit ratio between punitive and compensatory damages "to a significant degree" are presumptively unconstitutional in California. *Simon v. San Paolo U.S. Holding Co., 35 Cal. 4th 1159, 1182 n.7, 29 Cal. Rptr. 3d 379, 113 P.3d 63 (2005)* (quoting *State Farm, 538 U.S. at 425*).

Here, Plaintiff fails to provide sufficient allegations to satisfy the amount in controversy requirement. Plaintiff alleges that he lost the "nearly $500" that he spent in the Steam store when Defendants banned him. *Id.* at 4. *California Civil Code § 1723* potentially holds Defendants liable for these purchases as well as the statutory remedies provided for in the Consumers Legal Remedies Act. *Cal. Civ. Code § 1723(c)*. That statute, as applicable here, authorizes recovery for actual and punitive damages, restitution and an additional penalty of up to $5,000 where the consumer bringing the action "is a senior citizen or a disabled person." *Cal. Civ. Code § 1780(a)*, *(b)*. Assuming for the purposes of this screening order that Plaintiff is successful, Plaintiff may recover roughly $500 in compensatory damages and $5,000 **[*11]** in statutory damages.

The remainder of Plaintiff's requested relief comes in the form of punitive damages. ECF 8 at 7. Given that Plaintiff's allegations support at most $500 in compensatory damages, Plaintiff's request for $15 million in punitive damages is presumptively unconstitutional. Even a ten to one ratio between punitive and compensatory damages would only support $5,000 in punitive damages against each Defendant. *See Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists, 422 F.3d 949, 962 (9th Cir. 2005)* (calculating damages ratios for constitutionality purposes "by comparing each plaintiff's individual compensatory damages and punitive damages awards as to each defendant"). These punitive damages in addition to Plaintiff's compensatory damages and the statutory penalty brings Plaintiff's total to damages to $15,500. Such damages are still well below the $75,000 minimum amount in controversy. Further, the Amended Complaint fails to allege that Defendants engaged in sufficiently egregious conduct to suggest that a punitive damages award which exceeds the ten to one ratio could be constitutional. *See Simon, 35 Cal. 4th at 1182*. Accordingly, it is clear to a legal certainty that Plaintiff's Amended Complaint does not meet the jurisdictional minimum to establish diversity jurisdiction. *See [*12] Cason, 2013 U.S. Dist. LEXIS 147568, 2013 WL 5609329, at *3* (dismissing a case under *§ 1915(e)* where the complaint pleaded a presumptively unconstitutional amount of punitive damages and thus failed to "satisfy the jurisdictional minimum for diversity jurisdiction").

When dismissing a case for failure to state a claim, the Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez, 203 F.3d at 1130*. However, the Court previously granted Plaintiff two opportunities to establish federal subject matter jurisdiction. ECF 5; ECF 11. And in response to the Court's second screening order, Plaintiff chose not to file a second amended complaint. The Court thus **RECOMMENDS** that the District Judge dismiss Plaintiff's Amended Complaint **WITH PREJUDICE**. *See Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010)* (holding that a court may deny leave to amend "if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies").

## III. CONCLUSION

For the reasons stated above, the Court **ORDERS** the Clerk of the Court to reassign this case to a District Judge and **RECOMMENDS DISMISSAL** of Plaintiff's Amended Complaint pursuant to **[*13]** *28 U.S.C. § 1915(e)(2)* **WITH PREJUDICE**. Any party may serve and file objections to this recommendation within fourteen days after being served. *Fed. R. Civ. P. 72*; Civil Local Rule 72.

Matt Ardoin

2019 U.S. Dist. LEXIS 108146, *13

Finally, the Court reminds Plaintiff that the Federal Pro Se Program at the San Jose Courthouse provides free information and limited-scope legal advice to pro se litigants in federal civil cases. The Federal Pro Se Program is available by appointment and on a drop-in basis. The Federal Pro Se Program is available at Room 2070 in the United States Courthouse in San Jose (Monday to Thursday 9:00 am-4:00 pm, on Friday by appointment only), or by calling (408) 297-1480. Parties may make appointments by contacting the program's staff attorney, Mr. Kevin Knestrick, at (408) 297-1480 or kknestrick@asianlawalliance.org. In addition, the Court offers a pro se handbook free of charge; a copy may be obtained from the Clerk's office or downloaded from http://cand.uscourts.gov/prosehandbook.

**SO RECOMMENDED**.

Dated: May 30, 2019

/s/ Susan Van Keulen

SUSAN VAN KEULEN

United States Magistrate Judge

---

*End of Document*

Matt Ardoin

# Exhibit 16

**A** Neutral
As of: September 10, 2019 3:08 PM Z

# *Estavillo v. Behaviour Interactive*

United States District Court for the Northern District of California

June 27, 2019, Decided; June 27, 2019, Filed

Case No. 19-cv-01025-WHO

**Reporter**

2019 U.S. Dist. LEXIS 108144 *; 2019 WL 2635538

ERIK ESTAVILLO, Plaintiff, v. BEHAVIOUR INTERACTIVE, et al., Defendants.

**Prior History:** *Estavillo v. Behaviour Interactive, 2019 U.S. Dist. LEXIS 108146 (N.D. Cal., May 30, 2019)*

## Core Terms

amended complaint, subject matter jurisdiction, report and recommendation, Games, second amended complaint, magistrate judge, district judge, connected, screening, reassign, fails

**Counsel:** [*1] Erik Estavillo, Plaintiff, Pro se, San Jose, CA.

**Judges:** William H. Orrick, United States District Judge.

**Opinion by:** William H. Orrick

## Opinion

**ORDER ADOPTING REPORT AND RECOMMENDATION AND DISMISSING CASE**

Re: Dkt. No. 13

Plaintiff Erik Estavillo filed his original complaint and motion for leave to proceed in forma pauperis ("IFP") on February 25, 2019. [Dkt. Nos. 1, 2]. Estavillo initially sought relief against Epic Games, Behaviour Interactive, and Starbreeze Studios over various grievances related to their video games. *See* Complaint. Pursuant to *28 U.S.C. § 1915*, the Hon. Susan Van Keulen denied the IFP application without prejudice and after conducting an initial screening review of the complaint, found that it failed to establish subject matter jurisdiction or state a claim upon which relief may be granted. [Dkt. No. 5]. Estavillo was instructed to submit an amended IFP

application and an amended complaint. *Id.*

On March 26, 2019, Estavillo filed his amended IFP application and complaint. [Dkt. Nos. 7, 8]. In the amended complaint, Estavillo abandoned his claims against defendants Epic Games and Starbreeze Studios. *See* Amended Complaint. Instead, he sought relief against defendants Behaviour Interactive and Value Corporation under [*2] California law and the *Americans with Disabilities Act ("ADA")*. *Id.* Judge Van Keulen issued a second screening order that granted the amended IFP application but concluded that the amended complaint failed to establish a basis for federal subject matter jurisdiction. [Dkt. No. 11]. Estavillo was ordered to file a second amended complaint by May 13, 2019. *Id.* To date, he has not done so.

Because Estavillo has not consented to the jurisdiction of a magistrate judge, and defendants have not been served and therefore have not made an election regarding the jurisdiction of a magistrate judge, Judge Van Keulen ordered the clerk of court to reassign this case to a district judge. Report and Recommendation to Dismiss Plaintiff's Complaint pursuant to *28 U.S.C. § 1915* ("R&R Order") [Dkt. No. 13]. On May 31, 2019, this case was reassigned to me. [Dkt. No. 15]. Objections were due by June 13, 2019. As of the date of this order, no objections have been filed. I now consider Judge Van Keulen's report and recommendation pursuant to *28 U.S.C. § 1915*.

Judge Van Keulen held that Estavillo's amended complaint fails to establish federal subject matter jurisdiction. R&R Order at 4-8. She finds that there is no federal question jurisdiction [*3] because under the ADA, a claim against a website must be connected to a physical place and the amended complaint fails to allege that the digital store at issue connects to any such place. *Id.* at 4-5. She points out that it is clear to a legal certainty that the claims in the amended complaint do not meet the jurisdictional minimum to establish diversity jurisdiction. *Id.* at 5-7. I agree with her

2019 U.S. Dist. LEXIS 108144, *3

conclusions.

Judge Van Keulen recommends that I dismiss the amended complaint with prejudice because Estavillo has been given two opportunities to establish subject matter jurisdiction and that he has chosen not to file a second amended complaint. *Id.* at 7–8. As the judge to whom this case was assigned, I find Judge Van Keulen's report thorough and correct; I adopt it in every respect. Accordingly the complaint is dismissed with prejudice.

**IT IS SO ORDERED**.

Dated: June 27, 2019

/s/ William H. Orrick

William H. Orrick

United States District Judge

---

End of Document

# Exhibit 17



Overwatch® - Overwatch | Blizzard Shop





Overwatch®
Team-Based Shooter

Legendary Edition
$39.99

Standard Edition
$19.99

Buy Now

Gift

♡ Add to Wish List

Also available on:

Nintendo® Switch ⬀

PlayStation® 4 ⬀

Xbox® One ⬀

- Internet connection, Blizzard® Battle.net® desktop app, and registration required to play.

- Play in any game region.

- Retailer prices may vary.

- Upgrading to the Legendary Edition will not grant any included in-game items, or credits if previously unlocked on your account.

- System Requirements

- Product Details

## "Best Ongoing Game" - The Game Awards



6 GB RAM

### Storage
30 GB available hard drive space

### Internet
Broadband internet connection

### Resolution
1024 x 768 minimum display resolution

## Product Details

### Genre
Team-Based Shooter

### Platforms

- Windows
- Xbox® One
- PlayStation® 4

## Available Languages

- English (US)
- Português (BR)
- Deutsch
- Français
- Polski
- 한국어
- English (SEA)
- Español (AL)
- English (EU)
- Español (EU)
- Italiano
- Русский
- 繁體中文
- 日本語

## Available Regions

- Americas & Oceania
- Korea
- Europe
- Taiwan

## Product Requirements

- Internet connection, Blizzard® Battle.net® desktop app, and registration required to play.

- Play in any game region.

- Retailer prices may vary.

- Upgrading to the Legendary Edition will not grant any included in-game items, or credits if previously unlocked on your account.

## Age Rating



Blood
Use of Tobacco
Violence

Users Interact
In-Game Purchases

🌐 English (US)



CAREERS   ABOUT   SUPPORT
CONTACT US   PRESS   API

**89**

# Exhibit 18



# Create an account

| Facebook | Google |
|---|---|

OR

Start your adventures with a Blizzard Account.

| United States | |

| First Name | Last Name |

| Birth Month | Day | Year |

| Email |

| Password |

| Select a Question |

| Secret Answer |

☑ Receive news and special offers from Blizzard Entertainment by email.
*Carefully selected news, event information and special offers about Blizzard products and services.*

| Create a free account |

| Already have an account? |

By clicking on "Create a free account", I agree to the Blizzard End User License Agreement ⧉ and Privacy Policy ⧉ .

🌐 English (US) ⇕



CAREERS | ABOUT | SUPPORT | CONTACT US | PRESS | API

©2019 BLIZZARD ENTERTAINMENT, INC. ALL RIGHTS RESERVED.
All trademarks referenced herein are the properties of their respective owners.

# Exhibit 19

**********************************************************************

NOTICE:

IMPORTANT! PLEASE READ CAREFULLY.

THIS VERSION OF THE BATTLE.NET END USER LICENSE AGREEMENT WILL BECOME EFFECTIVE ON FEBRUARY 28, 2015.

**********************************************************************

YOU SHOULD CAREFULLY READ THE FOLLOWING AGREEMENT (THE "AGREEMENT") BEFORE INSTALLING THE BATTLE.NET CLIENT OR USE THE BATTLE.NET SERVICE.  IF YOU DO NOT AGREE WITH ALL OF THE TERMS OF THIS AGREEMENT, YOU MAY NOT INSTALL THIS SOFTWARE PROGRAM.

BATTLE.NET®

END USER LICENSE AGREEMENT

Thank you for your interest in Blizzard Entertainment, Inc.'s ("Blizzard" or "we") Battle.net® service (the "Service") and Blizzard's interactive games ("Games").  This Agreement sets forth the terms and conditions under which you are licensed to install and use the Battle.net client software ("Battle.net Client") to obtain access to the Service, and use Games on the Service. IF YOU DO NOT AGREE TO THE TERMS OF THIS AGREEMENT, YOU ARE NOT PERMITTED TO INSTALL, COPY OR USE THE BATTLE.NET CLIENT OR ANY OF THE GAMES. IF YOU REJECT THE TERMS OF THIS AGREEMENT WITHIN FOURTEEN (14) DAYS AFTER YOUR PURCHASE OF A GAME FROM BLIZZARD, YOU MAY CONTACT BLIZZARD AT 1-800-592-5499 TO INQUIRE ABOUT A FULL REFUND OF THE PURCHASE PRICE OF THAT GAME. IF YOU PURCHASED A GAME AT RETAIL, YOUR RIGHT TO RETURN THE GAME IS SUBJECT TO THE RETAILER'S RETURN POLICY.

1. The Service.

  A. The Battle.net Account.  To use the Service, you must register, or have previously established, an account on the Service (an "Account"). Creation and use of Accounts are subject to the following terms and conditions:

   i. You may establish an Account only if: (i) you are a "natural person" and an adult in your country of residence (Corporations, Limited Liability Companies, partnerships and other legal or business entities may not establish an Account); and (ii) you are not an individual specifically prohibited by Blizzard from using the Service.

   ii. The maximum number of Accounts that a person may register on the Service is limited to no more than three (3) Accounts.

**EXHIBIT E**

ix. You agree to pay all fees and applicable taxes incurred by you or anyone using your Account. If you choose a recurring subscription for a Game, you acknowledge that payments will be processed automatically (e.g., debited from your Battle.net Balance or charged to your credit card) until you cancel the subscription or the Account. Blizzard may revise the pricing for the goods and services offered through the Service at any time. YOU ACKNOWLEDGE THAT BLIZZARD IS NOT REQUIRED TO REFUND AMOUNTS PAID TO BLIZZARD FOR THE USE OF THE SERVICE, OR PURCHASES MADE THROUGH THE SERVICE, FOR ANY REASON.

x. Blizzard shall have the right to monitor and/or record your communications when you use the Service. When You use the Service, you acknowledge and agree that you have no expectation of privacy concerning your communications. Blizzard reserves the right to disclose your communications for any reason, including without limitation: (a) to satisfy any applicable law, regulation, legal process or governmental request; (b) to enforce the terms of this Agreement or any other Blizzard policy; (c) to protect our legal rights and remedies; (d) to protect the health or safety of anyone we believe may be threatened; or (e) to report a crime or other offensive behavior.

B. Grant of License.  If you accept and comply with the terms of this Agreement, Blizzard will grant and you will receive a non-sub licensable, and non-exclusive license to use the Service and Games subject to the "License Limitations," set forth in Section C below, as follows:

i. You may install the Battle.net Client on one or more computers under your legitimate control to access and use the Service.

ii. You may use the Service for your personal and non-commercial entertainment purposes only, unless otherwise set forth in this Agreement.

iii. You  may make and distribute copies of the Battle.net Client  free of charge for other potential users' provided they agree to the terms of this Agreement.

iv. You may not transfer your rights and obligations to use the Service.

v. With regards to Games that are purchased from retailers on original media (e.g., on CD-ROM, DVD, etc.) you may permanently transfer all of your rights and obligations related to the use of a Game under this Agreement to another person who agrees to the terms of this Agreement by physically transferring the original media, original packaging, and all manuals or other documentation distributed with the Game provided that you permanently delete all copies and installations of the Game in your possession or control. You agree to be solely responsible for any taxes, fees, charges, duties, withholdings, assessments, and the like, together with any interest, penalties, and additions imposed in connection with such transfer. Other than as set forth above, Blizzard does not recognize any purported transfer of the Games; and

vi. Certain Games may be subject to specific license terms that may include the following:

**EXHIBIT E**

1. Acceptance. If you accept the New Agreement, and if the Account registered to you remains in good standing, you will be able to continue using the Service, Battle.net Client, Account or the Game(s) subject to the terms of the New Agreement.

2. Rejection. If you decline to accept the New Agreement, or if you cannot comply with the terms of the New Agreement, you will no longer be permitted to use the Service, the Battle.net Client, Accounts or the Game(s).

B. Alterations to the Service and the Games. Blizzard may change, modify, suspend, or discontinue any aspect of the Service, Battle.net Client, Accounts or the Games at any time, including removing items, or revising the effectiveness of items in an effort to balance a Game. Blizzard may also impose limits on certain features or restrict your access to parts or all of the Service, Battle.net Client, Accounts or the Games without notice or liability.

10. Term and Termination.

A. Term. This Agreement is effective upon your creation of an Account, and shall remain in effect until for a reasonable period of time. In the event that Blizzard chooses to cease providing the Service, or license to a third party the right to provide the Service, Blizzard shall provide you with no less than three (3) months prior notice. Neither the Service nor Blizzard's agreement to provide access to the Service shall be considered a rental or lease of time on the capacity of Blizzard's servers or other technology.

B. Termination.

i. You are entitled to terminate this Agreement at any time by notifying Blizzard by email at support@blizzard.com.

ii. Blizzard reserves the right to terminate this Agreement at any time for any reason, or for no reason, with or without notice to you. For purposes of explanation and not limitation, most Account suspensions and terminations are the result of violations of this Agreement. In case of minor violations of these rules, Blizzard may provide you with a prior warning and/or suspend your use of the Account due to your non-compliance prior to terminating the Agreement or modifying or deleting an Account.

iii. In the event of a termination of this Agreement, any right to any and all payments you may have made for pre-purchased game access to certain Games are forfeit, and you agree and acknowledge that you are not entitled to any refund for any amounts which were pre-paid on your Account prior to any termination of this Agreement, and you will not be able to use the Service to play Games.

11. Dispute Resolution. Any and all disputes between you and Blizzard which arose out of this Agreement will be resolved in accordance with the Blizzard Entertainment Dispute Resolution

**EXHIBIT E**

# Exhibit 20

Blizzard End User License Agreement | Blizzard Legal

  

 Legal

NORTH AMERICA

# BLIZZARD END USER LICENSE AGREEMENT

## Blizzard End User License Agreement

LAST REVISED June 1, 2018

**IMPORTANT NOTICE:**

**THIS VERSION OF THE BLIZZARD END USER LICENSE AGREEMENT WILL BECOME EFFECTIVE ON June 21, 2018.**

**YOU SHOULD CAREFULLY READ THIS AGREEMENT (THE "AGREEMENT") BEFORE INSTALLING OR USING BLIZZARD'S ONLINE GAMING PLATFORM. IF YOU DO NOT AGREE WITH ALL OF THE TERMS OF THIS AGREEMENT, YOU MAY NOT INSTALL OR OTHERWISE ACCESS THE PLATFORM.**

Thank you for your interest in Blizzard's online gaming services and interactive games, and the interactive games from other developers ("Licensors") who make their games available through Blizzard's Platform. (Blizzard's and the Licensors' games are collectively referred to herein as the "Games"). This Agreement sets forth the terms and conditions under which you are licensed to install and use the Platform. As used herein, the term "Platform" refers collectively, and at times individually, to (1) the Blizzard Battle.net App software, (2) the Blizzard Battle.net gaming services, (3) each of the Games, (4) authorized Mobile Apps relating to the Games and the Blizzard Battle.net service, and (5) all features and

Agreement by this reference, and are available on Blizzard's Customer Support
database, located here.

vii. You agree to pay all fees and applicable taxes incurred by you or anyone using your
Account. If you choose a recurring subscription for a Game, you acknowledge that
payments will be processed automatically (e.g., debited from your Blizzard Balance or
charged to your credit card) until you cancel the subscription or the Account. Blizzard
may revise the pricing for the goods and services offered through the Platform at any
time. YOU ACKNOWLEDGE THAT BLIZZARD IS NOT REQUIRED TO REFUND AMOUNTS
YOU PAY TO BLIZZARD FOR  USE OF THE PLATFORM, OR FOR DIGITAL PURCHASES
MADE THROUGH THE PLATFORM, FOR ANY REASON.

viii. Blizzard shall have the right to monitor and/or record your communications when
you use the Platform, and you acknowledge and agree that when you use the
Platform, you have no expectation that your communications will be private. Blizzard
shall have the right to disclose your communications for any reason, including: (a) to
satisfy any applicable law, regulation, legal process or governmental request; (b) to
enforce the terms of this Agreement or any other Blizzard policy; (c) to protect
Blizzard's legal rights and remedies; (d) to protect the health or safety of anyone that
Blizzard believes may be threatened; or (e) to report a crime or other offensive
behavior.

B. **Grant of License.** If you accept and comply with the terms of this Agreement, Blizzard
will grant, and you will receive, a limited, revocable, non-sub licensable, and non-
exclusive license to use the Platform subject to the "License Limitations," set forth in
Section 1.C below, as follows:

i. You may install applicable components or features of the Platform (including the
Games) on one or more computers or mobile devices under your legitimate control.

ii. You may use the Platform for your personal and non-commercial entertainment
purposes only, unless specifically allowed under the terms of this Agreement.

iii. You may not transfer your rights and obligations to use the Platform.

iv. With regards to Games purchased from retailers on original media (e.g., on CD-ROM,
DVD, etc.) you may permanently transfer all of your rights and obligations related to

User License Agreement pertaining to any other aspect of the Platform, this Agreement shall supersede and govern your use of the Platform.

C. **License Limitations.** Blizzard may suspend or revoke your license to use the Platform, or parts, components and/or single features thereof, if you violate, or assist others in violating, the license limitations set forth below. You agree that you will not, in whole or in part or under any circumstances, do the following:

i. Derivative Works: Copy or reproduce (except as provided in Section 1.B.), translate, reverse engineer, derive source code from, modify, disassemble, decompile, or create derivative works based on or related to the Platform.

ii. Cheating: Create, use, offer, promote, advertise, make available and/or distribute the following or assist therein:

1. **cheats;** i.e. methods not expressly authorized by Blizzard, influencing and/or facilitating the gameplay, including exploits of any in-game bugs, and thereby granting you and/or any other user an advantage over other players not using such methods;

2. **bots;** i.e. any code and/or software, not expressly authorized by Blizzard, that allows the automated control of a Game, or any other feature of the Platform, e.g. the automated control of a character in a Game;

3. **hacks;** i.e. accessing or modifying the software of the Platform in any manner not expressly authorized by Blizzard; and/or

4. any code and/or software, not expressly authorized by Blizzard, that can be used in connection with the Platform and/or any component or feature thereof which changes and/or facilitates the gameplay or other functionality;

iii. Prohibited Commercial Uses: Exploit, in its entirety or individual components, the Platform for any purpose not expressly authorized by Blizzard, including, without limitation (i) playing the Game(s) at commercial establishments (subject to Section 1.B.v.3.); (ii) gathering in-game currency, items, or resources for sale outside of the Platform or the Game(s); (iii) performing in-game services including, without limitation, account boosting or power-leveling, in exchange for payment; (iv)

x. Transfers: Attempt to sell, sublicense, rent, lease, grant a security interest in or otherwise transfer any copy of the Platform or component thereof, or your rights to the Platform to any other party in any way not expressly authorized herein.

xi. Disruption / Harassment: Engage in any conduct intended to disrupt or diminish the game experience for other players, or disrupt operation of Blizzard's Platform in any way, including:

1. Disrupting or assisting in the disruption of any computer used to support the Platform or any Game environment. ANY ATTEMPT BY YOU TO DISRUPT THE PLATFORM OR UNDERMINE THE LEGITIMATE OPERATION OF ANY GAME MAY BE A VIOLATION OF CRIMINAL AND CIVIL LAWS.

2. Harassment, "griefing," abusive behavior or chat, conduct intended to unreasonably undermine or disrupt the Game experiences of others, deliberate inactivity or disconnecting, and/or any other activity which violates Blizzard's Code of Conduct or In-Game Policies.

xii. Violation of Laws: use the Platform to violate any applicable law or regulation.

D. **Platform and Game-Specific Features.**

i. Platform Features:

1. **Global Play.** Certain Games feature "Global Play," which allows you to play with players who are outside of the region associated with the Account that you have registered. The Global Play feature requires that some or all of your personal information provided to Blizzard when you registered the Account be transferred to servers operated by Blizzard in the regions where you wish to play the Game. By agreeing to participate in Global Play, you agree that Blizzard can transfer your data to Blizzard's servers in each of the regions that you select to participate in using the Global Play feature. For more information, please review Blizzard's Privacy Policy located here.

2. **Blizzard Balance.**

a. As an active Account holder, you may participate in the Blizzard Balance service ("Blizzard Balance"). Blizzard Balance can only be used to obtain certain products

# Exhibit 21



# Exhibit 22

  

 Legal

NORTH AMERICA

# TERMS OF SALE

**For those customers who order products or services through games playable on Battle.net®, the Battle.net Shop, or the Blizzard Gear Store.**

LAST REVISED: JANUARY 12, 2015

You should carefully read the following Terms of Sale ("Terms of Sale"). By placing an order to purchase a product and/or a service on or through Battle.net, the Battle.net Shop, or the Blizzard Gear Store (collectively, the "Blizzard's Online Services"), you agree to be bound by this legal contract and you acknowledge that you are at least 18 years old or that you have the permission from your parents or a legal guardian to enter into this legal contract.

## Section A – Terms of Sale Applicable to all Blizzard online purchases

1. **Pricing.**

   Blizzard shall have the right at any time, prior to Blizzard's acceptance of your order, to withdraw any discount and/or to revise prices to take into account increases in costs including (without limitation) costs of any materials, carriage, labor or the increase or imposition of any tax, duty or other levy and any variation in exchange rates. Any prices, quotations and descriptions made or referred to on the Blizzard's Online Services are subject to availability, do not constitute an offer and may be withdrawn or revised at any time prior to Blizzard's express acceptance of your order (as described below). Blizzard

104

action, explosion, fire, flood, storm, accident, strike, lock-out, trade dispute or labor disturbance, breakdown of plant or machinery, interruption in the supply of power or materials and in such event Blizzard may elect to cancel your order and **refund** any payments made.

10. **Entire Agreement.**

You acknowledge that these Terms of Sale supersede and cancel all previous contracts or agreements whether oral or written, express or implied, between Blizzard and you with regards to your ability to purchase goods or services from Blizzard's Online Services. These Terms of Sale prevail over any other terms or conditions contained in or referred to other agreements between the parties or implied by trade, custom or course of dealing. Any purported terms or conditions to the contrary are hereby excluded to the fullest extent legally permitted.

# Section B – Terms of Sale for Digital Content and Services

1. **Orders for Digital Content and Services.**

By placing an order on the Battle.net Shop, you agree that you are submitting a binding offer to purchase digital content, such as digital versions of Blizzard interactive games and digital content for Blizzard products ("Digital Content") or service from Blizzard Entertainment, Inc. Based upon your billing address, Blizzard will collect sales tax on your behalf and remit payment to the state government in states where digital goods are taxable. Your order is accepted and a contract concluded once Blizzard has sent you a Confirmation Email ("Confirmation Email"). YOU HEREBY EXPRESSLY AGREE THAT THE SUPPLY OF DIGITAL CONTENT AND THE PERFORMANCE OF BLIZZARD'S SERVICES BEGINS IMMEDIATELY AFTER THE CONFIRMATION EMAIL IS SENT. In the case of pre-orders, the performance begins when Blizzard adds the respective license to your Battle.net account after sending you a Confirmation Email.

2. **All Sales for Digital Content or Services are Final.**

No **refund**s are permitted except with respect to any statutory warranties or guaranties that cannot be excluded or limited by law.

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 years and not a party to this action.  My business address is SCHILLING LAW GROUP, PC 1100 Newport Center Drive, Suite 250, Newport Beach, CA 92660.  My email address is *shamika.polin@schillinglawgroup.com*.

On **September 10, 2019**, I served the following document(s) described as:

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS COMPLAINT; DECLARATION OF MATTHEW G. ARDOIN**

by serving a true copy of the above-described document in the following manner:

### BY OVERNIGHT MAIL DELIVERY

I am familiar with the office practice of Schilling Law Group, PC for collecting and processing documents for overnight mail delivery by Express Mail or other express service carrier.  Under that practice, such documents are delivered for overnight mail delivery by Express Mail or other express service carrier on that same day in the ordinary course of business, with delivery fees thereon fully prepaid and/or provided for.  I mailed a sealed envelope or package containing the above-described document(s) and addressed as set forth below in accordance with the office practice of Schilling Law Group, PC for collecting and processing documents for overnight mail delivery by Express Mail or other express service carrier:

| | |
|---|---|
| Erik Estavillo<br>3284 Cortese Circle<br>San Jose, CA 95127<br>Tel: (408) 593-1226 | |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 10, 2019

_____
Shamika L. Polin

4850-3262-6848, v. 3

5:19-cv-05540-NC

REQUEST FOR JUDICIAL NOTICE; DECLARATION OF MATTHEW G. ARDOIN

SCHILLING LAW GROUP, PC